[Crim. No. 5366.  Third Dist.  Apr. 17, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
JESUS RAYMOND PIMENTAL, Defendant and Appellant.

**COUNSEL**

Stanley J. Gale, under appointment by the Court of Appeal, and J. Fred Wright for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Edsel W. Haws and Michael Franchetti, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**PIERCE, P. J.**—Defendant, tried by a jury, appeals from a judgment sentencing him to state prison for violation of Penal Code section 667, petty theft by a previously convicted felon. In addition to the charge upon which defendant was convicted, he was also charged with violation of Health and Safety Code section 11501 (offer to sell narcotics). Both counts were based upon a single transaction. The jury acquitted defendant of the narcotics charge. There are three contentions: (1) violation of article I, section 8, of the Constitution of the State of California (trial on a charge previously dismissed by a magistrate); (2) error in denial of a Penal Code section 995 motion; (3) prosecution misconduct in (a) alluding to defendant's prior felony conviction in the jury's presence and (b) arguing unproven facts. The judgment will be affirmed.

FACTS

The prosecution's proof included: On October 22, 1968, on a Sacramento street, Ayres, an undercover agent of the State Bureau of Narcotics, was introduced to defendant by one Frank Garza, a narcotics

user who had become an informer. On October 24 Ayres with Garza again met defendant on a street corner and offered to buy heroin from defendant. The latter asked to see Ayres' tracks (i.e., needle marks from narcotic injections). He apparently became satisfied without that proof that Ayres was not an officer. Terms of purchase of a specified quantity of heroin were discussed. Ayres handed $25 to defendant who pocketed it. The officer said: "Don't hang me up." Defendant promised that he would not.[1] He told Ayres he only had to go a few blocks and would return soon. Defendant then drove off in his car. (In the parlance of those familiar with the narcotics traffic to "hang" one up or "burn" one means to take a proposed purchaser's money without returning.)

Narcotics supervising agent, Melvin Cozzalio, who was nearby, observed Ayres and defendant during the foregoing transaction through binoculars. Other agents of the bureau were also in the vicinity. When defendant drove away he was followed by Cozzalio and the other agents. The latter were in a car, or cars, separate from Cozzalio but they were in radio communication. (Cozzalio had had a previous encounter with defendant and was aware that defendant would recognize him if he got a close look at him.) When surveillance of defendant commenced Cozzalio paralleled the route of defendant and the other officers from another street. Unfortuitously, defendant turned north, the two cars passed and defendant got a close look at Cozzalio. (The officer has been with the narcotics bureau for many years.) Defendant stopped at a service station where he appeared to use the telephone. After defendant resumed his ride Cozzalio lost track of him for a period but again spotted his car driving in an easterly direction. At a traffic light the officer was held up and observed defendant turn south. He last saw defendant's car parked in front of a house. Cozzalio radioed the other officers he thought he had been recognized. He told them to return to where Ayres was waiting. Defendant did not return. He was later apprehended.

After defendant's arrest he was interrogated by Cozzalio. Defendant was first advised of his constitutional rights. The officer also read to him the provisions of Health and Safety Code section 11501. Defendant elected to talk. He did not confess to the narcotics violation. He did confess to petty theft, and his statement could be construed as an admission of an intent to complete the sale of heroin aborted when his suspicions had become aroused that Ayres was an officer. He said: "I thought there was something

---

[1]The express promise not to "hang" up Ayres was the officer's testimony at the second preliminary hearing. It was omitted at the trial where Ayres testified: "and he told me to give him the money and it would be just a little while and he would be back. He told me he had to go a few blocks."

Otherwise the substance of the evidence at the trial does not differ in any respect which we deem material to this appeal from the testimony at the preliminary hearing.

funny." When Garza's whereabouts were mentioned by Cozzalio defendant said: "When I get him, nobody will have to worry about him anymore."

Defendant testified in his own behalf. He admitted his conversation with Ayres. His testimony was contradictory. Once he said there were five persons present at the conversation. On cross-examination he said there were three. One of them was Garza. He admitted having asked to see Ayres' needle marks. Also he admitted having taken the $25. That, he insisted, he had done only because Ayres kept urging him to take the money despite his insistence he had no access to a source of heroin; also because Garza persuaded him (in Spanish) to take the money and "burn" Ayres. He denied that he had recognized Cozzalio.

At the first preliminary hearing defendant was charged only with the narcotics offense. The magistrate dismissed the charge. (The transcript of that hearing is not before us.) Another complaint was filed. Originally it, too, charged only that same offense. Before hearing, the complaint was amended to include the petty-theft-felony count. At the preliminary hearing held January 16, 1969, defendant was bound over only on the petty-theft-felony charge. The district attorney, however, added the Health and Safety Code section 11501 count to the information. Defendant was tried on both counts. His motion to dismiss the narcotics count under Penal Code section 995 was denied. The trial court, however, instructed the jury that the counts charged were mutually exclusive, in that the commission of one precluded commission of the other.

### The Contention That Article I, Section 8, of the State Constitution Was Violated

That constitutional provision provides in material part: "Offenses heretofore required to be prosecuted by indictment shall be prosecuted by information, after examination and commitment by a magistrate . . . ."

Defendant contends that constitutional guarantee is violated by Penal Code section 739. That section provides that when a defendant has been examined and committed by a magistrate the district attorney shall file an information in the superior court which "may charge the defendant with either the offense or offenses named in the order of commitment *or any offense or offenses shown by the evidence taken before the magistrate to have been committed.*" (Our italics.)

California case law negates defendant's contention. In *People* v. *Bird* (1931) 212 Cal. 632 [300 P. 23], the facts were similar to the facts here. By an original complaint filed in the municipal court defendant was charged with murder. The magistrate held him to answer only for manslaughter.

An original information charging manslaughter was filed. Thereafter a new complaint was filed charging murder. Again the magistrate held defendant to answer for manslaughter and again the information filed charged murder. Defendant was convicted of manslaughter. On appeal it was held that section 8 of article I of the Constitution had not been violated. The court stated on page 641: "The information, like an indictment, is merely an accusatory paper and is to be considered as no more than a part of the method of putting the defendant on trial for the charge named therein." Other rules can be taken from *Bird*: that the challenged code section (then numbered 809, now 739 of the Pen. Code) does not violate due process (*Lem Woon* v. *Oregon*, 229 U.S. 586 [57 L.Ed. 1340, 33 S.Ct. 783]); that a district attorney in filing an information does not act judicially.[2]

*Bird, supra*, has been followed by many subsequent cases. We need cite only two: *Parks* v. *Superior Court* (1952) 38 Cal.2d 609—which on page 612 [241 P.2d 521] cites many other of the offspring—and *Mulkey* v. *Superior Court* (1963) 220 Cal.App.2d 817, 821 [34 Cal.Rptr. 121].

▮ The evidence taken at the (second) preliminary hearing is before this court. Remembering that evidence sufficient to show probable cause that defendant committed the offense—as distinct from that proving guilt beyond reasonable doubt—met the test of the applicability of the charge, we are convinced that the charge was proper. ▮ The offense of offering to sell a narcotic has two necessary elements: (1) an act of selling or offering to sell the narcotic and (2) the specific intent to sell it. Actual delivery is not required. (*People* v. *Jackson* (1963) 59 Cal.2d 468, 469-470 [30 Cal.Rptr. 329, 381 P.2d 1]; *People* v. *Stenchever* (1967) 249 Cal.App.2d 74, 77-79 [57 Cal.Rptr. 14], hg. den.)

Defendant may or may not have had an intent at the outset to sell heroin to Ayres. Perhaps from the very beginning he intended to "burn" Ayres— to "Hang him up." (The jury evidently entertained at least a doubt in that respect.) But it was the theory of the prosecution that an actual sale was defendant's original purpose, that he had even phoned his source of supply, and that a change of intent ocurred only after he recognized Cozzalio. ▮ A specific intent offense "may be, and usually must be, inferred circumstantially." (*People* v. *Riley* (1963) 217 Cal.App.2d 11, 20 [31 Cal. Rptr. 404].)

▮ We hold that it was proper for the district attorney to add the narcotic offer count to the information.

---

[2]We note in passing, although the observation is no doubt pedagogic, that the rule of *Bird, supra*, is, of course, limited to cases where the offense or offenses charged in the information arise out of the transaction, evidence showing the probable commission of which was produced at the preliminary hearing. (Pp. 638-639.)

### ARGUED ERROR IN THE DENIAL OF THE PENAL CODE SECTION 995 MOTION

The foregoing discussion is applicable to, dispositive of, and was committed in the denial by the trial court of defendant's motion under Penal Code section 995 of the narcotics count.

### CONTENTION OF ERROR IN THE PROSECUTION'S REFERENCE TO DEFENDANT'S PRIOR CONVICTION

The prior conviction with which defendant was charged in the information and which increased petty theft to the status of a felony (Pen. Code, § 667) was robbery, first degree. The fact of that conviction was included in the reading of the information to the jury. The record of the conviction was received in evidence. It was referred to in argument. It was included in the form of verdict submitted to and returned completed by the jury. Penal Code section 1025 provides, inter alia, that a defendant charged with a previous conviction must be asked whether he has suffered that conviction, and if he answers the question affirmatively, the fact of the prior conviction must be withheld from the jury (either by reading it to them as a part of the accusatory pleading or by alluding to the fact at the trial). Penal Code section 1025, therefore, was not complied with. Apparently it was the theory of the prosecution that the section was inapplicable. That theory was no doubt premised upon a belief that the prior conviction was an element of the offense charged. (Since the defendant had pleaded not guilty to the offense, proof of all material elements of the offense was, it is argued, the burden of the prosecution.)

There is dictum in *People* v. *Fairchild* (1967) 254 Cal.App.2d 831, 838 [62 Cal.Rptr. 535] (hg. den.), and a holding in *People* v. *Pierson* (1969) 273 Cal.App.2d 130, 132-133 [77 Cal.Rptr. 888] (hg. den.) that in a petty-theft-with-a-prior charge (Pen. Code, § 667) the provisions of Penal Code section 1025 *are* applicable, and it is error not to comply with the mandates of that section. In *Pierson* it is stated (on p. 132 of Cal. App.2d): "[I]t is well settled in this state that in a prosecution for petty theft with a prior conviction of a felony, the fact of the former conviction is not an element of the crime, but merely a penalty-increasing device. [Citation.]" Also the court adds that section 1025 is designed "to reduce the possibility of jury prejudice against an accused due to the introduction into evidence of his prior misconduct." (P. 132.) In *Pierson* the error was held not prejudicial because the case had been tried to the court, not as

susceptible as a jury to such prejudice (and, we may add, bound to be aware of the provisions of the accusatory pleadings anyway; moreover, trial by the court is not within the apparent purview of the portion of section 1025 with which we are here concerned).

This court is convinced that the rule of *Pierson* is sound, and here *we do have a jury trial*. We still have to determine whether the error in this case was harmless.

### Was Noncompliance With Penal Code Section 1025 Prejudicial?

We have concluded that the captioned question must be answered in the negative. Error is prejudicial when it results in a miscarriage of justice. (Cal. Const., art. VI, § 13.) ▪ It falls into that category when the court can say from the evidence that there is a reasonable *probability* (*People v. Watson* (1956) 46 Cal.2d 818, 835 [299 P.2d 243])—or, assuming error of United States constitutional proportions—a reasonable *possibility* (*Chapman v. California*, 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R. 3d 1065]) that the jury could have reached a result more favorable to defendant.

▪ Here, the jury found the defendant guilty of petty theft. Defendant can claim prejudice only if it was reasonably possible for a jury's belief: (1) that there was no petty theft, (2) that there was doubt in the proof of the prior conviction, or (3) that reference to the prior conviction played a part in influencing the conviction of petty theft. Here there was not the slightest possibility of any of such results. The record of the prior conviction, now in evidence, is unequivocal. When denied, it was proved beyond question. Had it been admitted (and kept from the jury) the evidence of the petty theft is so strong reasonable minds could not differ that the crime was committed. There is not the remotest possibility that defendant did not at least take Officer Ayres' money. It was obviously taken for an illegal purpose.

Judgment is affirmed.

Friedman, J., and Janes, J., concurred.

A petition for a rehearing was denied May 13, 1970.