[Crim. No. 17144. In Bank. June 21, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
BEDFORD ALVIS BROWN, Defendant and Appellant.

## COUNSEL

Roderick P. Bushnell, under appointment by the Supreme Court, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, John T. Murphy and James M. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SULLIVAN, J.**—A jury found Bedford Alvis Brown guilty of one count of kidnaping (Pen. Code, § 207),[1] one count of battery (§ 242), one count of petty theft (§§ 484, 488) and two counts of trespassing (§ 602, subd. (*l*)). The court struck one of the four prior felony convictions charged in the information and sentenced defendant on the kidnaping conviction to state prison for the term prescribed by law.[2] Although defendant has appealed from the whole of the judgment (§ 1237, subd. 1) he attacks only his conviction on the kidnaping count.

The events culminating in the charges against defendant took place at two locations in Livermore—the apartment of his estranged wife[3] and the nearby residence of Jack and Frances Ferrario. Defendant telephoned his wife from Los Angeles, informing her that he was driving up to visit her. He arrived at her apartment in the early hours of the morning and, finding that she was not there, entered by force. He had already consumed a considerable quantity of beer and decided to fix himself a drink of whiskey. While looking for ice in the refrigerator, he discovered a package of meat on which was written the name of Jack Ferrario, a close friend of his wife. Enraged, he destroyed much of the food in the refrigerator, slashed several pieces of furniture with a knife and smashed a television set. He then took a considerable amount of his wife's clothing, a radio and a typewriter, and put them in his car.

Defendant then went to the Ferrario residence to find Jack who, unknown to defendant, was not at home. Forcing a window open, defendant entered the house and as a result awakened Mrs. Ferrario who got up to investigate. He lunged at her thinking she was Mr. Ferrario, struck her and threw her to the floor. Defendant then forced her to accompany him in a search of the house for her husband. During this time, according to her testimony, he committed a number of improprieties indicative of an intention to rape her. At this point her neighbor, who had heard Mrs. Ferrario's screams, telephoned to ask if she needed help.

---

[1]Hereafter, unless otherwise indicated, all section references are to the Penal Code.

[2]Additionally defendant was sentenced as follows: six months in county jail upon his conviction of trespassing, said sentence to run concurrently with the sentence imposed on the kidnaping count; six months in county jail upon each of his convictions of battery, petty theft and the second conviction of trespassing, said sentences to run consecutively with the sentence imposed upon the first conviction of trespassing. However, execution of the jail sentences was stayed pending appeal and until completion of the prison sentence, when the stay is to become permanent.

[3]The record discloses that defendant's marriage was terminated by a judgment of nullity prior to the trial in this case.

Defendant thereupon dragged and pulled Mrs. Ferrario out of the house and along a narrow passageway between her house and the house next door. Seeing this, the neighbor's husband ordered defendant to release Mrs. Ferrario and warned him that the police were on their way. Defendant released her and fled. All in all he had taken her approximately 40 to 75 feet from the back door of her house.

At trial defendant admitted forcibly taking Mrs. Ferrario through the house as he searched for her husband, but denied that he had made any sexual advances or that he had dragged her out of the house and along the passageway.

■  Defendant attacks his conviction on the kidnaping count, claiming that it is invalid under the rule announced in *People* v. *Daniels* (1969) 71 Cal.2d 1119, 1139 [80 Cal.Rptr. 897, 459 P.2d 225, 43 A.L.R.3d 677]. It is apparent, however, that the *Daniels* rule[4] does not apply to a conviction of kidnaping under section 207. (*People* v. *Stanworth, ante,* p. 588 at pp. 598-599 [114 Cal.Rptr. 250, 522 P.2d 1058].) In *Stanworth* we explained that neither factor of the *Daniels* rule applies to simple kidnaping because the rule makes reference to the underlying crime of robbery which, by definition, is involved in a section 209 kidnaping but is not necessarily involved in a section 207 kidnaping. Both factors of *Daniels* necessitate consideration of the underlying crime of robbery. Under the first factor, the movements must be more than merely incidental to the crime of robbery; under the second factor, the movement of the victim must cause a substantial increase in the risk of harm above that present in the underlying crime. However, a kidnaping under section 207, by definition, does not occur in connection with another offense such as robbery. The section describes the offense, without reference to other crimes, as forcible movements of a victim "into another country, state, or county, or into another part of the same county . . . ." (§ 207)[5]

---

[4]In *Daniels* we held that a judgment of conviction of kidnaping for the purpose of robbery under *section 209,* commonly referred to as aggravated kidnaping, cannot stand where the "movements of the victim are merely incidental to the commission of the robbery and do not substantially increase the risk of harm over and above that necessarily present in the crime of robbery itself." (*Id.* at p. 1139.)

[5]Section 207 defines kidnaping as follows: "Every person who forcibly steals, takes, or arrests any person in this state, and carries him into another country, state, or county, or into another part of the same county, or who forcibly takes or arrests any person, with a design to take him out of this state, without having established a claim, according to the laws of the United States, or of this state, or who hires, persuades, entices, decoys, or seduces by false promises, misrepresentations, or the like, any person to go out of this state, or to be taken or removed therefrom, for the purpose and with the intent to sell such person into slavery or involuntary servitude, or otherwise to employ him for his own use, or to the use of another, without the

"The statutory language implies that the determining factor in the crime of kidnaping is the actual distance of the victim's movements; and further, that the minimum movements necessary for the commission of the crime are present where the victim is forcibly taken 'into *another part* of the same county.' [Original italics.] Finally, because the victim's movements must be more than slight [citation] or 'trivial' [citation], they must be substantial in character to constitute kidnaping under section 207." (*People v. Stanworth, supra, ante,* 588, 601.)

Where the movements of the victim are slight or insubstantial as they were in *People* v. *Thornton, supra, ante,* pp. 738, 749-750 [114 Cal. Rptr. 467, 523 P.2d 267], they cannot constitute kidnaping. In *Thornton* the defendant confronted the victim, Suzanne P., in a laundromat, knocked her down and, while holding a knife in one hand, threatened to kill her unless she stopped screaming. He then dragged her to the rear of the laundromat where he committed various sexual acts. In reversing the conviction of simple kidnaping, we stated, "Because the sexual assault there took place wholly within the confines of a single room in a laundromat, any asportation involved was not 'into another part of the same county' within the meaning of section 207." (*Id.* at p. 767.)

The same principle was expressed in *Cotton* v. *Superior Court* (1961) 56 Cal.2d 459 [15 Cal.Rptr. 65, 364 P.2d 241]. There the movements of the victims occurred at a farm labor camp. One farmworker was chased and another pushed a relatively brief distance. A third person was dragged for 15 feet. Having recognized that kidnaping under section 207 must involve more than the "slightest movement" (*id.* at p. 465), we ordered that the charges of a simple kidnaping be set aside.

■ With these principles in mind, we proceed to determine whether the asportation of the victim in the instant case was sufficient to constitute kidnaping under section 207.

The facts reveal that defendant confronted the victim in the kitchen of her house and forcibly took her through her house in search of her husband. They returned to the kitchen and then the living room where the victim was able to free herself momentarily to answer a telephone call. Defendant then dragged and pulled the victim out the back door to the

free will and consent of such persuaded person; and every person who, being out of this state, abducts or takes by force or fraud any person contrary to the law of the place where such act is committed, and brings, sends, or conveys such person within the limits of this state, and is afterwards found within the limits thereof, is guilty of kidnaping."

side of the house for a distance estimated to be not greater than 75 feet.[6] When a neighbor confronted them, defendant released the victim and ran away. Neither the distance of the movements in the house nor defendant's purpose in taking the victim outside the house are revealed by the record. However, the evidence is insufficient to show that the movements were substantial. The asportation of the victim within her house and for a brief distance outside the house must be regarded as trivial. We therefore conclude that under the particular facts of this case the movement of the victim did not constitute a forcible taking "into another part of the same county" and that the conviction of simple kidnaping must be reversed.[7]

The judgment is reversed as to the kidnaping count and in all other respects is affirmed.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Burke, J., and Clark, J., concurred.

---

[6]We attach little significance to the fact that, under the circumstances here, the victim was forcibly taken *outside* her residence since the "determining factor in the crime of kidnaping [under section 207] is the actual distance of the victim's movements" (*People* v. *Stanworth, supra, ante,* p. 601; cf. *People* v. *Timmons* (1971) 4 Cal.3d 411, 415 [93 Cal.Rptr. 736, 482 P.2d 648]; *People* v. *Williams* (1970) 2 Cal.3d 894, 903 [88 Cal.Rptr. 208, 471 P.2d 1008].) Arbitrary boundaries established by buildings or other enclosures, ownership of property, fences, and other points of reference will themselves vary in size and distance. Thus the character of the victim's movements cannot be determined simply on the basis that the victim remained inside or was taken outside a particular area.

[7]Since we have decided that the evidence is insufficient to support a conviction of kidnaping, we need not decide defendant's arguments that the reporter's transcript is inaccurate and that the court's instructions on the elements of kidnaping were erroneous. For the same reason, we are not required to decide defendant's contention that the trial court erred in failing to give instructions, *sua sponte,* on attempted kidnaping (see *People* v. *Vanderbilt* (1926) 199 Cal. 461, 463 [249 P. 867]) and false imprisonment (see *People* v. *Apo* (1972) 25 Cal.App.3d 790, 796 [102 Cal. Rptr. 242]; *People* v. *Gibbs* (1970) 12 Cal.App.3d 526, 547 [90 Cal.Rptr. 866]; *People* v. *Morrison* (1964) 228 Cal.App.2d 707, 713 [39 Cal.Rptr. 874]) as lesser and included offenses within the charge of kidnaping.