[No. A025980. First Dist., Div. Three. Feb. 27, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
DANA XAVIER COLE, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Certified for publication except as to part II. (Cal. Rules of Court, rules 976(b) and 976.1.)

**COUNSEL**

Christopher Campbell, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and Robert R. Granucci, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**ANDERSON, J.**\*—This is a consolidated appeal from judgments rendered after two jury trials at which defendant, Dana Xavier Cole (hereafter appellant), was found guilty of several serious crimes charged in three informations. These convictions involve two separate incidents—a kidnap and rapes in January and several burglaries, assault and attempted kidnaping in September.

I

The first trial involved those offenses arising out of the later September incident detailed in information Nos. CR 9922 and CR 9924, which charged appellant with burglary, assault with a deadly weapon, attempted kidnaping and use of a deadly weapon in the commission of a felony.

On September 22, 1983, at approximately 5:30 a.m., appellant burglarized the Stoffers' house; his palm print was found on the kitchen windowsill, and a watch stolen from the Stoffers' house was later found in his possession. Appellant later admitted to two strangers the burglarizing of the Stoffers' residence and stealing a watch.

About an hour later appellant walked into the bedroom of Angela Schaper, age 17, and put a knife to her neck. Miss Schaper positively identified appellant as her assailant. Appellant held the knife to Miss Schaper's back

---

\*Assigned by the Chairperson of the Judicial Council.

and led her from her bedroom downstairs, through the dining room and kitchen, directly to the front door. After appellant opened the front door, he heard Angela's mother upstairs; thereupon he released Miss Schaper and fled.

Shortly thereafter, appellant knocked on the front door of Mrs. Peterson's apartment, which is located in the same complex as the Schapers'. A knife stolen from the Stoffers was later found just outside the front door of this apartment, where appellant had earlier been spotted by a police officer.

For these offenses appellant was convicted of two counts of burglary (Pen. Code,[1] § 459), assault with a deadly weapon (§ 245, subd. (a)), attempted kidnaping (§§ 664, 207), and use of a deadly weapon (§ 12022, subd. (b)). He was sentenced to the upper term of six years for burglary; one year for assault with a deadly weapon, to run consecutively; ten months for attempted kidnaping, to run concurrently; one year and four months for the other burglary conviction, to run consecutively; plus a one-year enhancement for use of a deadly weapon.

A. *Sufficient Evidence Supports Appellant's Conviction of Attempted Kidnaping*

Appellant contends that there was insufficient evidence to convict him of the attempted kidnaping of Angela. We disagree.

When the sufficiency of the evidence is challenged on appeal, the court must review the whole record in the light most favorable to the judgment to determine whether it contains substantial evidence—evidence that is credible and of solid value—from which a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. (*People* v. *Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255]; *Jackson* v. *Virginia* (1979) 443 U.S. 307, 317-320 [61 L.Ed.2d 560, 572-574, 99 S.Ct. 2781].)

Section 207, subdivision (a), states that "Every person who forcibly steals, takes, or arrests any person in this state, and carries the person into another country, state, or county, or into another part of the same county, is guilty of kidnaping." Section 664 states that "Every person who attempts to commit any crime, but fails, or is prevented or intercepted in the perpetration thereof, is punishable . . . ."

An attempt to commit a crime consists of (1) the specific intent to commit the crime, and (2) a direct but ineffectual act done toward its com-

---

[1]Unless otherwise indicated, all further statutory references are to the Penal Code.

mission. (*People* v. *Anderson* (1979) 97 Cal.App.3d 419, 425 [158 Cal.Rptr. 727]; *People* v. *Buffum* (1953) 40 Cal.2d 709, 718 [256 P.2d 317].)

1. *There was substantial evidence by which the jury reasonably concluded that appellant had the specific intent to kidnap Miss Shaper.*

■ Specific intent may be, and usually must be, inferred from circumstantial evidence. (*People* v. *Pimental* (1970) 6 Cal.App.3d 729, 734 [86 Cal.Rptr. 169].) "When a specific intent is an element of the offense it presents a question of fact which must be proved like any other fact in the case. It is nonetheless a question of fact though it cannot be proved by direct and positive evidence. All the circumstances surrounding the act furnish the evidence from which the presence or absence of the specific intent may be inferred by the jury; and no presumption of law can ever arise that will decide it." (*People* v. *Maciel* (1925) 71 Cal.App. 213, 218-219 [234 P. 877].)

The trial court herein explicitly instructed the jury that it must find that appellant had the specific intent to commit the crime of kidnaping to convict him of attempted kidnaping. The trial court also gave CALJIC No. 2.01 on the sufficiency of circumstantial evidence and the reasonable interpretations that may be drawn therefrom.

■ Appellant contends that there are several different inferences that may be drawn from his act of forcing Miss Schaper down the stairs with him at knife point. However, simply because there are several reasonable interpretations of appellant's act does not mean that the jury did not reasonably reject the other possible interpretations and determine from the evidence that appellant had the specific intent to kidnap Miss Schaper.

■ To justify a conviction on circumstantial evidence,[2] the facts and circumstances must not only be entirely consistent with the theory of guilt but must be inconsistent with any other reasonable conclusion. (CALJIC No. 2.01 (4th ed. 1979).) ■ However, this rule is primarily for the guidance of the *trier of fact,* not for the reviewing court. " 'The rule . . . does no more than to instruct the jury that if a reasonable doubt is created in their minds for any reason they must acquit the defendant. But where the jury rejects the hypothesis pointing to innocence by its verdict, and there is evidence to support the implied finding of guilt as the more reasonable of the two hypotheses, this court is bound by the finding of the jury.' [Cita-

---

[2]Herein appellant's specific intent to kidnap Miss Schaper was necessarily proven by circumstantial evidence.

tions.] Thus, even though the appellate court may itself believe that the circumstantial evidence might be reasonably reconciled with the defendant's innocence, this alone does not warrant interference with the determination of the trier of fact. [Citations.] Whether the evidence presented at trial is direct or circumstantial, under *Jackson* and *Johnson* the relevant inquiry on appeal remains whether *any* reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." (*People* v. *Towler* (1982) 31 Cal.3d 105, 118 [181 Cal.Rptr. 391, 641 P.2d 1253].)

When appellant entered the Schapers' residence, he had already just committed one burglary gaining entry through a window and was carrying a knife he stole in that burglary—an unequivocal act of premeditation and preparation. He then somehow gained entry to the Schaper residence and first went into Mrs. Schaper's room, but it was too dark in the room for her to see his face. Instead of simply running out the front door, he went into her daughter Angela's bedroom. He thereby risked exposing his identity to Angela, who was in fact able to see his face through the mirror on the wall of her bedroom. After crossing over to where she was seated, covering her mouth with his hand and putting a knife to her neck, he commanded her to remain silent and told her "let's go." He then led her down the stairs with a knife at her back. He walked her through the dining room and kitchen *directly* to the front door. After hearing this evidence, the jury reasonably concluded that appellant had the specific intent to kidnap Miss Schaper.

*2. There was substantial evidence by which the jury reasonably concluded that the kidnaping was prevented by extraneous circumstances.*

Mere preparation to commit a crime does not constitute an attempt to commit it. (*People* v. *Berger* (1955) 131 Cal.App.2d 127, 130 [280 P.2d 136].) There must be some appreciable fragment of the crime committed, and it must be in such progress that it will be consummated unless interrupted by extraneous circumstances. (*People* v. *Staples* (1970) 6 Cal.App.3d 61, 65-66 [85 Cal.Rptr. 589]; *People* v. *Buffum, supra,* 40 Cal.2d 709.) In *People* v. *Dillon* (1983) 34 Cal.3d 441 [194 Cal.Rptr. 390, 668 P.2d 697], the California Supreme Court explained that the requirement of "an appreciable fragment of the crime" was simply a restatement of the requirement of an overt act directed towards immediate consummation. The court stated, "If it is not clear from a suspect's acts what he intends to do, an observer cannot reasonably conclude that a crime will be committed; but when the acts are such that any rational person would believe a crime is about to be consummated absent an intervening force, the attempt is under way . . . ." (*Id.,* at p. 455.)

The record herein reveals that the jury reasonably believed that appellant would have completed the kidnap of Miss Schaper if he had not

heard her mother upstairs. Appellant forced Miss Schaper directly to the front door. This constituted a direct, unequivocal act toward kidnaping her. However, he was interrupted by Mrs. Schaper's footsteps upstairs. Miss Schaper testified that she heard the bathroom door open and then appellant left without her.

3. *The actual distance Miss Shaper was moved is irrelevant since the charge was attempted kidnaping.*

Appellant's reliance on the *Daniels'* (*People* v. *Daniels* (1969) 71 Cal.2d 1119 [80 Cal.Rptr. 897, 459 P.2d 225, 43 A.L.R.3d 677]) line of cases is misplaced. The California Supreme Court has held that the *Daniels* rule, which sets forth the elements of kidnaping for robbery under section 209 (aggravated kidnaping), does not apply to a conviction of kidnaping under section 207. (*People* v. *Brown* (1974) 11 Cal.3d 784, 787 [114 Cal.Rptr. 426, 523 P.2d 226]; *People* v. *Stanworth* (1974) 11 Cal.3d 588, 596 [114 Cal.Rptr. 250, 522 P.2d 1058].)

Appellant also relies on several section 207 kidnaping cases for support. ■ It is true that the victim's movements must be more than slight (*Cotton* v. *Superior Court* (1961) 56 Cal.2d 459 [15 Cal.Rptr. 65, 364 P.2d 241] or "trivial" (*People* v. *Rocco* (1971) 21 Cal.App.3d 96, 105 [98 Cal.Rptr. 365]) to constitute the crime of simple kidnaping; they must be *substantial* in character (*People* v. *Brown, supra,* 11 Cal.3d 784, 788; *People* v. *Stanworth, supra,* 11 Cal.3d 588, 601), and movement within a single room is not asportation " ' "into another part of the same county" ' " within the meaning of section 207." (*People* v. *Thornton* (1974) 11 Cal.3d 738, 767 [114 Cal.Rptr. 467, 523 P.2d 267], disapproved on other grounds in *People* v. *Flannel* (1979) 25 Cal.3d 668, 684, fn. 12 [160 Cal.Rptr. 84, 603 P.2d 1].)

■ However, since the crime herein is *attempted* kidnaping, the distance Miss Schaper was moved is immaterial—asportation simply is not an element of the offense. *People* v. *Fields* (1976) 56 Cal.App.3d 954 [129 Cal.Rptr. 24] involved an attempt to force a young girl on the street into a car, which attempt was abandoned by the defendant when she screamed. The court therein affirmed a conviction of attempted kidnaping even though the victim was never physically moved.

In the present case, the district attorney explained to the jury that the prosecution was not trying to prove that appellant moved Miss Schaper a great distance, but only that he was *attempting* to move her a great distance.

There was substantial evidence herein by which the jury reasonably concluded that appellant committed the crime of attempted kidnaping.

B. *Appellant's Miranda Rights Were Not Violated*

Immediately after appellant had left the Schapers' residence after attempting to kidnap Angela, Mrs. Schaper called the police and reported Angela's ordeal and that appellant was armed with a knife. Shortly thereafter, appellant jumped into the car of Hal Hodges, a stranger, and demanded a ride. Appellant confessed to Hodges that he had just broken into an apartment and had escaped. After taking appellant to and leaving him at a green house on Willow Street, Hodges sought and found an officer and directed him to where he had left the appellant.

Meanwhile, several officers had responded to the burglary call and were searching the Olive Tree Apartments' area for appellant. Officer Lincoln spotted appellant standing at the door of one of these apartments (the Peterson apartment where the Stoffer knife was later found). Officer Lincoln asked him to step away from the door and get into the patrol car, to which appellant agreed. However, when Lincoln was distracted by the police radio, appellant pushed open the car door and fled. Officer Lincoln then chased him into the parking lot and broadcast his description over the police radio.

Several officers then started an apartment-to-apartment search for appellant. People began calling the police to report somebody in their backyards and on their roofs. Nevertheless appellant made good his escape from the complex.

Thereafter, Officer Lincoln was informed of the location of appellant's car, Officer Waller disabled that car, and then waited for appellant's return. When appellant's friend, Tim Hoffman, approached the car, he was directed by Officer Waller to drive to Plaza Circle, where Hoffman had planned to meet appellant—but with Officer Waller hiding in the back seat.

At the rendezvous spot when appellant approached his car and as he was about to open the door, Officer Waller came up from the back seat and the chase was on. After an extended chase involving many officers, the appellant reversed directions and ran back right into Officer Waller who stopped him.

Officer Waller laid appellant in a prone position, started to pat search him, had him come up on his knees and continue to pat-search him. Although he had information from the Schapers that appellant was armed, he found no weapons. He then asked appellant where the knife was and appellant told him that he had already gotten rid of it.

■ Appellant contends that his statement to the officer should not have been received in evidence since it was taken in violation of *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]. He does not contend that his statement was actually compelled by police conduct which overcame his will to resist. (See *Beckwith* v. *United States* (1976) 425 U.S. 341, 347-348 [48 L.Ed.2d 1, 8, 96 S.Ct. 1612].) Thus, the only issue before us is whether the officer was justified in failing to advise appellant of his *Miranda* rights before asking *any* questions.

In a case strikingly similar on its facts, the United States Supreme Court has recently held that there is a "public safety" exception to the requirement that *Miranda* warnings be given before a suspect's answers may be admitted in evidence. In *New York* v. *Quarles* (1984) — U.S. —, — [81 L.Ed.2d 550, 558, 104 S.Ct. 2626, 2633], a woman approached two police officers and told them that she had just been raped, described her assailant, and told them that he had just entered a nearby supermarket carrying a gun. When the police caught the defendant, they discovered that he was wearing an empty shoulder holster. After handcuffing him, they asked him where the gun was and defendant nodded toward some empty cartons and responded that "the gun is over there." Defendant was then formally arrested and advised of his *Miranda* rights.

In reversing the Court of Appeal's exclusion of defendant's initial statement and the gun as an admission and product thereof in violation of *Miranda,* the Supreme Court held that "the need for answers to questions in a situation posing a threat to the public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment privilege against self-incrimination." (*New York* v. *Quarles, supra,* — U.S. at p. — [81 L.Ed.2d at p. 558, 104 S.Ct. at p. 2633].)

Similarly, Officer Waller's question to appellant concerning the whereabouts of the knife was reasonably prompted by a concern for public safety. The officer had information that appellant had a weapon. He was therefore confronted with the immediate necessity of ascertaining where the knife was. Until the knife was discovered, it posed a threat to public safety.

Since the circumstances herein presented a genuine danger to the public safety, Officer Waller was justified in failing to give appellant his *Miranda* warnings. Appellant's answer was properly admitted into evidence.

## C. *Sentencing Error*

■ Appellant contends that it was error for the trial court to give him concurrent sentences for attempted kidnaping and assault with a deadly weapon. We agree.

Section 654 prohibits multiple punishment for multiple crimes which arise out of a single act or an indivisible course of conduct. (*People* v. *Miller* (1977) 18 Cal.3d 873, 885 [135 Cal.Rptr. 654, 558 P.2d 552].) Herein the trial court recognized that the attempted kidnaping and assault with a deadly weapon charges were covered by section 654 when he stated, "The holding of the girl and moving her and the holding of the knife to her—were, in effect—can be treated as part and parcel of the same thing."

However, under section 654, concurrent sentences for such offenses are prohibited, since they may have collateral consequences amounting to increased punishment. (*People* v. *Avila* (1982) 138 Cal.App.3d 873, 878 [188 P.2d 754]; *People* v. *Niles* (1964) 227 Cal.App.2d 749 [39 Cal.Rptr. 11].)

When confronted with offenses within the ambit of section 654, the procedure is to stay the execution of sentence on all but one of the offenses subject to section 654. (*People* v. *Avila, supra,* 138 Cal.App.3d 873, 879.) No incremental punishment can flow from the stayed sentence since section 654 prohibits punishment for a stayed sentence. (*People* v. *Niles, supra,* 227 Cal.App.2d 749.)

Appellant contends that this court must stay the lesser sentence, the attempted kidnaping, as well as the enhancement to it. An enhancement must be stayed where the sentence on the count to which it is added is required to be stayed. (*People* v. *Guilford* (1984) 151 Cal.App.3d 406 [198 Cal.Rptr. 700].) Appellant relies on *People* v. *Aho* (1984) 152 Cal.App.3d 658 [199 Cal.Rptr. 671] for support. However, *Aho* does not hold that the court *must* stay the lesser sentence. Although the usual practice is to impose sentence on the offense with the most serious punishment, the trial court does have discretion to sentence on a *less* serious offense. (*People* v. *Avila, supra,* 138 Cal.App.3d 873, 879.) The court may choose to do so here and impose the enhancement as well.

The judgments are affirmed in all other particulars.

II*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

The judgments on all three informations are affirmed in all particulars, except that the judgment imposing concurrent sentences for assault with a deadly weapon (count III) and attempted kidnaping (count IV) in information No. 9924 is reversed. The case is remanded for the trial court to ex-

---

*Part II of this opinion is not certified for publication. (See fn., *ante,* at p. 41.)

ercise its discretion in staying sentence on one of the offense consistent with the views expressed herein.

Barry-Deal, J., concurred.

WHITE, P. J.—I respectfully dissent. Reviewing the reporter's transcript, it appears at page one that the prosecution without objection amended information No. Cr. 9924 prior to selection of the jury. Count II was dismissed. Count IV, alleging that appellant kidnaped Angela Schaper (Pen. Code, § 207), was amended to allege that appellant did ". . . forcibly attempt to steal, take . . . Angela Schaper, in the County of Monterey, State of California, and did take the said Angela Schafer into another part of said Monterey County," a violation of Penal Code sections 664, 207.[1]

On page 76 of the transcript it appears that the clerk read information No. Cr. 9924, including count IV as amended, to the trial jury immediately prior to the prosecution's opening statement. As far as I am able to determine upon review of the record, this is the only instance during the entire trial wherein the jury heard the phrase "into another part of the [same or] said Monterey County." Neither counsel in closing summation mentioned the phrase or adequately explained, in my opinion, its factual/legal significance in light of the evidence.[2] The court's instructions in relevant part pass muster in light of defense counsel's failure to request additional instructions elucidating the phrase. It appears at page 277 of the transcript that the court charged the jury that "[t]he crime of attempted kidnaping requires the specific intent to commit the crime of kidnaping." Thereafter, on page 281, it appears that the jury received per the court's instructions (CALJIC 9.19 (1979 rev.) KIDNAPING—NO OTHER UNDERLYING CRIME) a definition of "simple" kidnaping defining the element of asportation as ". . . the movement of such other person was for a substantial distance, that is, a distance

---

[1]Moving to amend, the assistant district attorney stated "[a]nd in Count IV, since the victim was not taken any further than out of her own apartment, I don't think under the case law that the defendant can be convicted of 207, but could be convicted of an attempted 207." In light of the fact that victim Angela Schaper and Sharon Schaper, the mother, testified at trial precisely as they did at the preliminary examination hearing, I conclude that the People's representative realized that additional evidence relative to appellant's intent to kidnap would not be presented. In a sense, then, it appears that the prosecution's thinking was "while the defendant didn't kidnap, it's worth a 'try' to amend to allege 'attempted kidnapping.' But of course, [o]ur courts are not gambling halls but forums for the discovery of the truth." (Peters, J. in *People* v. *St. Martin* (1970) 1 Cal.3d 524, 533 [83 Cal.Rptr. 166, 463 P.2d 390].)

[2]The prosecution argued: "[w]e are not saying he was able to move her a great distance, but he was attempting to move her a great distance. And that's why it's charged as an attempt."

Defense counsel argued "[t]here is no indication whatsoever that he was attempting to kidnap her, or to take her out of the house."

more than slight or trivial." (In due course, also, the court properly instructed on the law of attempt (CALJIC 6.00, ATTEMPT-DEFINED; CALJIC No. 6.01, ABANDONMENT OF ATTEMPT-WHEN NOT A DEFENSE; and CALJIC No. 6.02, ABANDONMENT OF ATTEMPT-WHEN A DEFENSE.)

Appellant, of course, does not assert instructional error. While arguably incomplete, the court's instructions were nevertheless proper. From the instructions received, I presume that the jury was able to extrapolate and therefore understood that the crime of attempted kidnaping requires the specific intent to forcibly move or take a person against their will for a substantial distance, that is, a distance more than slight or trivial. Insofar as I am able to determine from the record, however, the jury was never informed in argument or advised per instructions as regards the nexus between the concept of "substantial distance" embodied in the instructions and the charging allegation (in the phraseology of Pen. Code, § 207) "and did take the said Angela Schaper into another part of said Monterey County." In light of the undisputed factual context of this case, the factfinder's understanding of this link, I think, was essential in arriving at a truthful verdict.

As heretofore noted, prior to undertaking the state's burden of proof the record reflects (fn. 1, *ante*) that the assistant district attorney realized that "simple" kidnaping is not always that "simple."[3] This case serves to illustrate.

There is no question but that appellant at least "intended to forcibly move or take" Miss Schaper from her bedroom to her residence's front door. His actions subsequent to his words "Don't say anything. Let's go," clearly demonstrated that intent. He literally carried out that intent at the point of a knife in his victim's back. Appellant thereby feloniously assaulted Miss Schaper with a deadly weapon. (Pen. Code, § 245, subd. (a).) Under California case precedents, however, appellant did not forcibly move or take Miss Schaper a "substantial distance" or "into another part of the same county" within the meaning of "simple" kidnaping as defined per the court's instructions and/or Penal Code section 207. Undoubtedly contrary to the expectations of young Miss Schaper and that of her mother, our law views her forceful "asportation" at appellant's hands as being "slight" or "insubstantial."[4] In *People* v. *Thornton* (1974) 11 Cal.3d 738 [114

---

[3]The "complexity" of the law of kidnaping (see *People v. Stender* (1975) 47 Cal.App.3d 413, 422 [121 Cal.Rptr. 334]) where the court concluded: "Thus, we are led in circles."

[4]In *People* v. *Stanworth* (1974) 11 Cal.3d 588, 598-601 [114 Cal.Rptr. 426, 523 P.2d 226], our Supreme Court, opinion by Sullivan, J., unanimously rejected an invitation to extend analysis of *Daniels* (*People* v. *Daniels* (1969) 71 Cal.2d 1119 [80 Cal.Rptr. 897, 459 P.2d 225, 43 A.L.R.3d 677]) aggravated kidnaping for robbery (Pen. Code, § 209) to "simple" kidnaping (Pen. Code, § 207). Consequently, no cognizable question exists as to whether the use of the knife substantially increased the risk of harm to the victim. (*Id.*, at pp. 599-601.)

Cal.Rptr. 467, 523 P.2d 267] (cert. den., 420 U.S. 924 [43 L.Ed.2d 393, 95 S.Ct. 1118], overruled on other grounds, 25 Cal.3d 684 [160 Cal.Rptr. 84, 603 P.2d 1]) (cited in the majority opn. at p. 50) the victim was sexually assaulted within the physical confines of a single room at a laundromat. The asportation involved was held not to be "into another part of the same county" within the meaning of section 207, "simple" kidnaping. (*Id.,* at p. 767.) In the case at bench, appellant limited the asportation of his victim to the physical confines of her home. Consequently, the prosecution reasonably concluded that appellant could not be "convicted of 207." (See fn. 1, *ante,* p. 55.) While the *Stender* court (*People* v. *Stender, supra,* at p. 421) correctly, I think, points out that arbitrary physical boundaries is not the *sole factor* when assessing whether the victim's movement was over a "substantial distance," I think that in the factual posture of this case, it is a determining factor. In any case apparently our law remains as stated in footnote 9 at page 129 in *In re Earley* (1975) 14 Cal.3d 122 [120 Cal.Rptr. 881, 534 P.2d 721], where it is stated: "Section 207, of course, differs from section 209 in that violation can occur in the absence of an 'associated crime.' (*Stanworth,* at p. 601; see also *People* v. *Brown* [1974] 11 Cal.3d 784, 787 [114 Cal.Rptr. 426, 523 P.2d 226]; *People* v. *Apo* [1972] 25 Cal.App.3d 790, 797 [102 Cal.Rptr. 242].) When an 'associated crime' is involved, there can be no violation of section 207 unless the asportation is more than incidental to the commission of that crime. (*Cotton* v. *Superior Court, supra,* 56 Cal.2d 459 [15 Cal.Rptr. 65, 364 P.2d 241].)" (*In re Earley, supra,* at p. 129, fn. 9.) On this record, I would think that appellant's felonious assault with a deadly weapon upon Miss Schaper constitutes an "associated crime" (Pen. Code, § 245, subd. (a)) precluding a finding of simple kidnaping.

In my view, then, the jury's verdict in count IV finding appellant guilty of attempted kidnaping reflects their implied finding that appellant specifically intended to carry Miss Schaper a substantial distance, i.e., a distance beyond her residence's front door sufficient to be more than "incidental" to his "associated" felonious assault upon her so as to be "into another part of the same county." My expressed doubts that counsel's arguments and the court's instructions did not fully alert the jury to the complexities of "simple" kidnaping notwithstanding, I presume, as required on review, that the jury impliedly found that appellant harbored the last above-stated specific intent. I, then, do not ask myself whether I believe the evidence at trial established the said specific intent beyond a reasonable doubt. Instead I ask the only relevant question, whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the said essential specific intent beyond a reasonable doubt? (*Jackson* v. *Virginia* (1979) 443 U.S. 307, 318-319 [61 L.Ed.2d 560, 573, 99 S.Ct. 2781], rehg. den., 444 U.S. 890 [62 L.Ed.2d 126, 100 S.Ct. 195].) In

answering that question, of course, I presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. (*People* v. *Mosher* (1969) 1 Cal.3d 379, 395 [82 Cal.Rptr. 379, 461 P.2d 659]; *People* v. *Johnson* (1980) 26 Cal.3d 557, 576 [606 P.2d 738, 16 A.L.R.4th 1255].)

My colleagues applying the identical standard of review conclude in effect that the jury could, from the evidence, reasonably find appellant intended to carry or move Miss Schaper a substantial distance beyond her front door, or as the majority succinctly states: "the jury reasonably concluded that appellant had the specific intent to kidnap Miss Schaper." (Majority opn., at p. 49.) The majority reasons "that the jury reasonably believed that appellant would have completed the kidnap of Miss Schaper if he had not heard her mother upstairs." (Majority opn., at p. 49.) I disagree. Upon review of the entire record, I conclude that there is no basis in the evidence for any rational trier of fact to infer or find that appellant abandoned an intention to forcibly carry or take Miss Schaper outside of her home. In truth, there is no evidence reasonably inferring that appellant ever intended to kidnap his assault victim within the meaning of Penal Code section 207. Viewed in the abstract, I would think that there were only three possible states of mind relevant to "section 207" "simple" kidnaping that appellant could have *acted out,* so to speak, as he moved his frightened victim against her will. Appellant's mind set would either be (1) release and leave behind his victim at the front door, which, of course, he did, or (2) move or "carry" her a substantial distance beyond the door, which concededly he did not do, or (3) the thought never *entered his mind* until he reached the door and released her.

Upon painstaking consideration of the entire surrounding circumstantial evidence, I conclude that the only conclusion that any rational trier of fact could reasonably reach is that appellant did exactly no less than what he intended to do and no more. Further, the entire evidence will not support as being reasonable the belief attributed to the jury by the majority, i.e., that the sound of the mother's footsteps upstairs when heard by appellant foiled the kidnap of Miss Schaper. There is no direct evidence that appellant heard the mother's footsteps upstairs. In her entire testimony and that portion specifically relating that she "heard the bathroom door open" which to her meant "my mom woke up, . . ." Miss Schaper never so much as intimated that appellant heard the mother's footsteps upstairs. I hold the only reasonable inference from the victim's testimony is that appellant was in the act of leaving the apartment prior to the time or as she heard her mother stirring upstairs. Miss Schaper testified on redirect examination "[w]e just walked downstairs and he opened the door and I heard my mom get up and he just walked out the door." She repeated the sequence on recross-exam-

ination; "[a]s he was opening the door I heard my mom get up. Then he walked out." Appellant, she stated, did not "cut" her, "molest," or make any sexual advances during the entire incident. He did not say anything as he left. I do not find in Miss Schaper's testimony any reasonable inference that awareness of the mother walking upstairs "interrupted" an "unequivocal act toward kidnaping . . ." Angela Schaper. Particularly is this the case when the evidence is clear that appellant knew that Ms. Schaper, the mother, was awake and aware of his unlawful presence before he even entered the daughter's bedroom. Ms. Sharon Schaper testified that she was awakened by a hand on her leg (she thought it was her daughter's), "turned over" to see appellant walk over and open her bedroom door and leave. She testified that as he left he told her to "go back to sleep." Naturally, she rejected his suggestion; she awakened her "boy friend," "Gary," ran into the bathroom, there she "grabbed" her housecoat, determined in a glance that her daughter was not in her bedroom, started down the stairs when Angela "came running up the stairs to me." Under these shown circumstances I find it wholly irrational that any reasonable trier of fact would believe that but for the mother's footsteps appellant would have forced young Schaper to accompany him to his next destination, i.e., the Peterson's nearby apartment front door.

I would reverse the attempted kidnaping judgment in count IV. Simply stated, the undisputed evidence is so weak that it undermines confidence in any inference pointing to guilt of attempted kidnaping. Consequently, I would hold at law the evidence insufficient to constitute proof beyond a reasonable doubt. (*People* v. *Hall* (1964) 62 Cal.2d 104, 112 [41 Cal.Rptr. 284, 396 P.2d 700].) Obviously the victim's rights are not adversely affected by reversing a judgment bottomed on a finding that should be disaffirmed as a matter of law. Likewise both the state's and the defendant's interests are equally best served.

Further, I respectfully dissent from my colleagues' view equating the need to find the knife to the need to find the gun in *New York* v. *Quarles* (1984) — U.S. — [81 L.Ed.2d 550, 558, 104 S.Ct. 2626, 2633]. Rather than "split hairs," to paraphrase O'Conner, J., I would confine the "public safety exception" to the *Miranda* rule to a factual context of a firearm in places of public at large accommodation similar to that in which the "exception" was born. In any case, my view of our society is not as yet such that I would think that anyone finding the "Schaper's recently stolen kitchen knife" would constitute a serious immediate threat to the public's safety. I think that such knives are readily accessible in the home quite apart from appellant's conduct. Given the fact that three of the apartments in the complex were burglary or attempted burglary sites, the likelihood is that the knife, if not recovered by police search, would be found by law-abiding

residents, if not victims, of the immediate area intent upon helping the police preserve evidence of the crimes. I would hold that appellant's Fifth Amendment privilege against self-incrimination was violated[5] but find that the error admitting his admission that "he had already gotten rid of it" (see majority opn. at p. 51) could have no effect whatsoever on the outcome of the trial. Beyond a reasonable doubt the error was harmless. (See *People* v. *Murtishaw* (1981) 29 Cal.3d 733, 756 [175 Cal.Rptr. 738, 631 P.2d 446], cert. den., 455 U.S. 922 [71 L.Ed.2d 464, 102 S.Ct. 1280].) It was overkill to even introduce the statement. Consequently, the cost to the government had the court properly excluded the statement would have been nil.

On the other hand, to sanction the court's order admitting appellant's admission under the rubric of "public safety exception" to *Miranda* I think needlessly erodes the privilege against self-incrimination guaranteed by the Constitution to each of us alike whether we be obvious criminals or innocent criminal suspects.

---

[5]Respondent's brief filed before *Quarles* concedes at page 35 that there was *Miranda* error.