Filed 9/19/13  P. v. Alvarez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E056968 |
| v. | (Super.Ct.No. SWF025162) |
| CLIFFORD ALLEN ALVAREZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Mark Mandio, Judge.  Affirmed.

James R. Bostwick, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and William M. Wood and Marilyn L. George, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Clifford Allen Alvarez is serving a sentence for attempting to kidnap two girls who were under 14 years of age, one of whom he also threatened.  In this

1

appeal, he challenges the trial court's imposition of consecutive sentences as to his attempted kidnapping and threatening one girl on the grounds that Penal Code section 654[1] applied.

## I.  PROCEDURAL BACKGROUND AND FACTS

Approximately 3:20 p.m. on March 11, 2008, 13-year-old Jane Doe 1 (Doe 1) was walking home from middle school.  On Temeku Drive, defendant, who was in a vehicle, approached her from behind.  He asked her where Margarita Road was, and she replied that she did not know.  She kept walking, feeling apprehensive.  Defendant "slowed up again next to [her]" and asked where La Serena Road was.  She told him she had not lived in the area for very long and she did not know the streets.  She continued to walk away.

Defendant "inched" the vehicle up, stopped again next to Doe 1, and told her to get in his vehicle.  She asked, "'Are you serious?'"  He replied, "Yes."  She asked the same question two more times, and he answered in the affirmative, but the last time, "he stopped being polite and said, 'Yes, get in my car.'"  She started stammering, and then he said, "'You need to get in my car.  If you run, I will shoot you.'"  She began to panic and was shaking.  Defendant then softened his approach and told her, "'Look if you get in my car, I won't hurt you.  You'll be fine.  Just get in my car.'"  Doe 1 saw defendant turn away and reach down.  She knew there was a compartment there.  She seized the opportunity to get away by throwing her backpack and running through a gate into

_____

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2

someone's backyard. When she stopped, turned around, and locked the gate, she saw that defendant's car "had turned around and zoomed back up the road." Remaining in the backyard, she called the police on her cell phone.

That same afternoon, defendant approached 11-year-old Jane Doe 2 (Doe 2) and attempted to get her into his vehicle. Defendant never threatened to hurt Doe 2 or say he had a weapon. Another minor who was with Doe 2 wrote down the license plate number of defendant's van. The license plate number was run through the Department of Motor Vehicles database, and defendant was traced to his home in Temecula. Does 1 and 2 identified defendant in an in-field showup at his home.

Defendant was charged with attempted kidnapping (§§ 664, 207, subd. (a)) in counts 1 (Doe 1) and 2 (Doe 2) and making a criminal threat (§ 422) in count 3 (Doe 1). As to counts 1 and 2, it was alleged that the crime was committed against a person who was under the age of 14; however, defendant's section 995 motion was granted as to these enhancements. Following a jury trial, defendant was convicted of counts 1 and 3. A mistrial was declared as to count 2. Defendant subsequently pled guilty to count 2. He was sentenced to the middle term of two years six months on count 1, a concurrent term of two years six months on count 2, and a consecutive term of eight months on count 3.

## II. CONSECUTIVE SENTENCES ON ATTEMPTED KIDNAPPING
## AND MAKING CRIMINAL THREATS

Defendant contends the trial court erred in not staying his sentence for criminally threatening Doe 1 (count 3) pursuant to section 654 because it was based on the same conduct in attempting to kidnap her (count 1).

3

In sentencing defendant, the trial court stated: "I do not believe, number one, that Count 3 is 654 to Count 1. I could be wrong, but it appears to me that there is a separate intent. The first, Count 1, is an intent to commit a kidnapping. In other words, in this specific instance to get somebody who was in between a child and a teenager into your van. [¶] And, two, when that wasn't working, to terrorize that person sufficiently so that they—you could effectuate your first purpose. But the purpose of the second crime was separate in that you were essentially trying to stun them by terrorizing them. And I see that as a different and separate intent and a separable crime, even if it was meant to effectuate intent of the first crime."

Section 654, subdivision (a), provides in pertinent part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."

"Section 654 prohibits multiple punishment for a single act or an indivisible course of conduct. [Citations.] Whether a defendant's conduct constitutes a single act under section 654 depends on the defendant's intent in violating penal statutes. If the defendant harbors separate though simultaneous objectives in committing the statutory violations, multiple punishment is permissible. [Citation.] This question is one of fact for the trial court, and we uphold the trial court's finding if it is supported by substantial evidence. [Citation.]" (*People v. Williams* (2009) 170 Cal.App.4th 587, 645 [Fourth Dist., Div. Two].) Accordingly, multiple punishment is proper if the defendant

4

entertained multiple criminal objectives which were independent of each other. (*People v. Harrison* (1989) 48 Cal.3d 321, 335.)

Generally, to establish a kidnapping has occurred, "'the prosecution must prove three elements: (1) a person was unlawfully moved by the use of physical force or fear; (2) the movement was without the person's consent; and (3) the movement of the person was for a substantial distance.' [Citation.]" (*People v. Dalerio* (2006) 144 Cal.App.4th 775, 781, fn. omitted.) "An attempt to commit a crime consists of two elements: a specific intent to commit the crime, and a direct but ineffectual act done toward its commission." (§ 21a.) "The act must go beyond mere preparation, and it must show that the perpetrator is putting his or her plan into action, but the act need not be the last proximate or ultimate step toward commission of the substantive crime. [Citation.]" (*People v. Kipp* (1998) 18 Cal.4th 349, 376.) Thus, for the offense of attempted simple kidnapping, the prosecution need not prove the victim was moved for a substantial distance. Rather, the prosecution must show the defendant attempted to move the victim with the requisite specific intent. (*People v. Cole* (1985) 165 Cal.App.3d 41, 50.)

According to defendant, the trial court's statement in support of its decision to run the sentences consecutively, "acknowledges that the criminal threat (count 3) was committed to effectuate the kidnapping (count 1)." We disagree. The attempted kidnapping was complete by the time defendant asked Doe 1 to get in his vehicle. He was also convicted of attempting to kidnap Doe 2, but he never threatened to harm her. Thus, the fact that he threatened to shoot Doe 1 if she ran away was gratuitous. Courts have held that section 654 "'cannot, and should not, be stretched to cover gratuitous

5

violence or other criminal acts far beyond those reasonably necessary to accomplish the original offense.'" (*People v. Cleveland* (2001) 87 Cal.App.4th 263, 272.) "'[A]t some point the means to achieve an objective may become so extreme they can no longer be termed "incidental" and must be considered to express a different and more sinister goal than mere successful commission of the original crime. . . .'" (*Ibid*.) Here, defendant's threat to shoot Doe 1 if she ran constituted a gratuitous criminal act beyond that necessary to accomplish the crime of attempted kidnapping. Thus, separate punishment was appropriate.

III.  DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


                                              HOLLENHORST         
                                                           Acting P. J.
We concur:

        MCKINSTER            
                        J.

        MILLER          
                        J.