[Crim. No. 8923. Fourth Dist., Div. One. Sept. 28, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
DOUGLAS EDWARD ANDERSON, Defendant and Appellant.

COUNSEL

Appellate Defenders, Inc., under appointment by the Court of Appeal, Judith Smith Leland, Kenyon C. Keller and Paul G. Mast for Defendant and Appellant.

George Deukmejian, Attorney General, Jack R. Winkler and Robert H. Philibosian, Chief Assistant Attorneys General, Daniel J. Kremer, Assistant Attorney General, Harley D. Mayfield, A. Wells Peterson and Robert M. Foster, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**WIENER, J.**—A jury convicted Douglas Edward Anderson of kidnaping for ransom (Pen. Code, § 209) and first degree burglary (Pen. Code, § 459).[1] He appeals from the judgment, questioning the sufficiency of the evidence, evidentiary rulings, competence of defense counsel, conduct of the prosecutor, and jury instructions. We conclude his arguments are without merit and affirm the judgment.

[1] All references are to the Penal Code unless otherwise indicated.

## SUFFICIENCY OF THE EVIDENCE

Defendant contends his section 995 motion should have been granted because there was insufficient evidence to have held him to answer to the charge of kidnaping for ransom (§ 209). He also argues the evidence was insufficient for the jury to have found him guilty of that charge. In order to avoid a repetition in the statement of facts, the summary which follows contains only those facts which were presented at both the preliminary hearing and at trial.

At approximately 8 p.m. on June 6, 1976, Mrs. Judy Silberberger and her baby were at their home in Fallbrook. Upon seeing headlights pull up in her driveway, she turned on the outside light and unlocked the front door. It was not her father, whom she had been expecting, but Anderson's codefendant, Joseph Michael Wasko. He entered the house, put his arm around her waist and a gun to her side. He said he was with the CIA and asked if she were Mrs. Silberberger. She said "Yes." This question was asked before Mrs. Silberberger had mentioned her name. Before she told him she had a baby, he asked her if her baby was in the house. As Wasko began walking Mrs. Silberberger from the living room area, she heard the front door close and saw the defendant. Wasko told her not to get panicky; he was only interested in getting money from her husband. He then handcuffed her to the refrigerator. While she was handcuffed, the phone rang. Mrs. Silberberger told Wasko if she did not answer the telephone, the caller would become suspicious because she was always at home. When the phone rang again, Wasko brought the phone to her. The caller was a friend, Anita McCusker, who was able to tell something was wrong. Mrs. McCusker asked if there was trouble. When Mrs. Silberberger said, "yes," Mrs. McCusker inquired if she should call the police. Mrs. Silberberger said "Yes." The telephone call ended. Wasko then asked Mrs. Silberberger how she could reach her husband. She told him by a telephone call. He then unhandcuffed her and took her back to the living room. Wasko wanted to know how fast she could contact her husband. Mr. Silberberger, a wealthy contractor, had the means of producing a substantial amount of cash. She replied just by a telephone call. When Mrs. Silberberger told Wasko her husband drove a Mercedes 450 SEL, he corrected her by stating she meant a 450 SL. He also said if Mrs. Silberberger's father arrived, they would have to take him hostage.

San Diego County Deputy Sheriff Charles Patrick was on routine patrol when he received a radio call to go to the Silberberger residence to investigate a report of a burglary in progress. At the residence, he entered

through the front door. As he did so, Mrs. Silberberger grabbed Wasko's gun. Anderson, who had run into the bedroom, surrendered upon the officer's demand.

The thrust of the defendant's argument with reference to the sufficiency of the evidence at both the preliminary hearing and at trial is directed to the lack of significant movement by either Mrs. Silberberger or her infant son. (See *People v. Daniels* (1969) 71 Cal.2d 1119, 1139 [80 Cal.Rptr. 897, 459 P.2d 225, 43 A.L.R.3d 677].) ■ Asportation—movement—for any distance, or at all, is not essential to the crime of kidnaping for ransom. (*People v. Macinnes* (1973) 30 Cal.App.3d 838 [106 Cal.Rptr. 589].) The illustration used by the *Macinnes* court in explaining its holding is remarkably similar to the case before us except for the fortunate and prompt intervention by law enforcement. "[W]here an assailant seizes the banker's wife in the banker's home (without asportation of the wife) and telephones the banker for ransom, . . . the banker is the victim of an extortion, and the banker's wife is the victim of having been 'seize[d] . . . to commit extortion' (Pen. Code, § 209) upon the banker." (*Id.,* at p. 844.)

■ There was ample evidence to support the ruling by the committing magistrate and the verdict of the jury. Defendant and his cohort had seized Mrs. Silberberger; they made it clear they were after money; they were willing to take another hostage if necessary—Mrs. Silberberger's father. The elements of section 209—seizures with the specific intent to hold for ransom or to obtain something of value from relatives—were met.

## Jury Instructions

Anderson contends the trial court erred by not instructing *sua sponte* on attempted kidnaping for ransom. ■ He correctly states the general rule that a crime necessarily includes an attempt to commit that crime. (§ 1159; *People v. Vanderbilt* (1926) 199 Cal. 461 [249 P. 867]; CALJIC (4th ed. 1979) Appen. C, Gen. Rules, Attempts, p. 331; cf. *In re James M.* (1973) 9 Cal.3d 517 [108 Cal.Rptr. 89, 510 P.2d 33] [attempted assault is not a crime]; *People v. Duens* (1976) 64 Cal.App.3d 310 [134 Cal.Rptr. 341] [attempted assault to commit rape is not a crime].) ■ He is also correct in the general statement that the obligation to give a *sua sponte* instruction includes giving instructions on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense are present. (*People v. Sedeno* (1974) 10 Cal.3d 703, 715

[112 Cal.Rptr. 1, 518 P.2d 913].) However, one exception to the general rule is where the defendant is either guilty of the offense charged or not guilty at all. (*People* v. *Wells* (1970) 13 Cal.App.3d 265, 277 [91 Cal.Rptr. 460]; *People* v. *Morrison* (1964) 228 Cal.App.2d 707, 716 [39 Cal.Rptr. 874]; see generally CALJIC No. 17.10 Use Note; Cal. Benchbook (1971) 6.D Lesser Included Offenses, pp. 258a-258b.)

There is a similarity between the completed crime of kidnaping for ransom and the attempt to commit a crime under section 1159, for in both situations the conduct need not be successful in bringing about the desired results. ■ An attempt to commit a crime consists of (1) the specific intent to commit the crime, and (2) a direct but *ineffectual* act done toward its commission. (1 Witkin, Cal. Crimes, §§ 93-102, pp. 90-97; *People* v. *Franquelin* (1952) 109 Cal.App.2d 777, 783-785 [241 P.2d 651].) ■ The crime of kidnaping for ransom is complete when the kidnaping is done for the specific purpose of obtaining ransom even though the purpose is not accomplished. To define kidnaping for ransom otherwise would overlook the underlying gravity of the offense with an unwarranted emphasis on the success of the criminal activity.

■ Trial counsel for defendant was faced with a tough case. Defendant was arrested at the scene after a series of events which at best indicated some criminal activity. The seizure of Mrs. Silberberger was complete. After his arrest, defendant told the police he "only" wanted to rob and burglarize; he had no intent or plan to kidnap for ransom. The only question which defendant could reasonably present to the jury was his intent. If he intimated he was at the residence for the purpose of kidnaping, this was tantamount to his admission of guilt. He has little choice but to elect a strategy which excluded the crime of attempted kidnaping. Where the giving of the instruction is in direct conflict with the defense theory, the court does not have the *sua sponte* duty of giving that instruction. (*People* v. *Sedeno, supra,* 10 Cal.3d at pp. 716-717.) The court was most meticulous in discussing instructions with counsel both before the jury was instructed and during their deliberations when the jury had a question involving the unsuccessful result of the kidnaping. As noted above, there is a common element in an attempt to commit a crime and an unsuccessful kidnaping. Understandably, this similarity in the crimes may have caused the jury to ponder and request a further explanation. The court was justified in not giving the instruction on attempted kidnaping in light of counsel's theory of defense and the absence of evidence to support that instruction. (*People* v. *Wells, supra,* 13 Cal.App.3d at p. 277.)

## INCOMPETENCE OF COUNSEL

Defendant claims his trial counsel was incompetent because he did not receive the reasonably competent assistance of an attorney acting as his diligent conscientious advocate. (*People* v. *Pope* (1979) 23 Cal.3d 412, 424-425 [152 Cal.Rptr. 732, 590 P.2d 859].) ■ Defendant has the burden of showing counsel was incompetent. Where the record does not affirmatively reflect counsel's ignorance of the facts or the law in making a decision, it will be presumed it was made on a valid tactical basis. Where there are matters outside the record which defendant believes establish incompetence, a writ of habeas corpus should be sought. (*Id.*, at pp. 425-426.) Each of counsel's alleged failings is discussed separately.

1. *The Failure to Ask for Jury Instructions on Attempted Kidnaping for Ransom*

We reject this argument for the same reasons as discussed above.

2. *Failure to Move to Suppress Evidence*

Defendant asserts his counsel should have made a section 1538.5 motion to suppress evidence seized as a result of a warrantless search of the vehicle the defendants used to arrive at the victim's house. At the police station, the car was searched and a pair of goggles with eyepieces taped over, a rifle, a box of .30 caliber ammunition and a pair of binoculars were found. This evidence was introduced at trial.

The clerk's transcript contains a minute order indicating defendant's motion to suppress evidence (§ 1538.5) was denied on January 9, 1978. The supplemental clerk's transcript contains the points and authorities in support of the section 1538.5 motion filed on behalf of both defendants by counsel for Wasko.

Because the argument in the motion is primarily directed to the failure by the police to comply with section 844, an argument which defendant has now abandoned in this appeal, we address the specific issue which he has raised.

■ Trial counsel did not err in failing to make a suppression motion. The car parked in front of the house was an instrumentality of the crime and, as such, could be seized and searched. (*North* v. *Superior Court* (1972) 8 Cal.3d 301, 305-306 [104 Cal.Rptr. 833, 502 P.2d 1305, 57

A.L.R.3d 155]; *People* v. *Laursen* (1972) 8 Cal.3d 192, 201-202 [104 Cal.Rptr. 425, 501 P.2d 1145].) In addition, there may be other information outside the record which caused counsel to limit his section 1538.5 motion to the specific arguments contained in the moving papers. It is also unknown from this record whether the section 1538.5 motion was restricted to the issues raised in the points and authorities, for under the broad heading of illegality of the search, other matters may have been discussed during argument.

### 3. *Failure to Object to Prosecutorial Misconduct*

On cross-examination, the prosecutor asked defendant: "When you first came into the house and you saw and heard Mr. Wasko talking to Mrs. Silberberger, did you hear Mr. Wasko say, 'You're going to have to get dressed, Mrs. Silberberger, we're going to have to leave.'?" to which defendant answered, "No, I didn't hear anything like that." There was no objection to this question.

Defendant argues the inference which must be drawn from the question is that the prosecutor asked the question in bad faith to manufacture evidence which had no factual basis. There are, however, other legitimate inferences to be drawn. There may be a police report indicating that such a statement was made, or both counsel, in their preparation for trial, may have discovered the statement was made. The latter inferences also explain why the prosecutor asked the question and defense counsel did not object. The record does not establish either the misconduct or incompetence of counsel as a demonstrable reality.

### 4. *Failure to Demur*

Defendant also urges that counsel was incompetent because he failed to demur to the complaint because it failed to specify the victim. The omission of the name of the victim was only a technical deficiency which in no way obscured the charges.

### 5. *Failure to Object to a Witness Using a Report*

On direct examination, the deputy sheriff testified he did not remember finding a handcuff key in defendant's clothing. On redirect, without objection, he read from his report to the contrary—a handcuff key was found in defendant's clothing. Defendant now urges the failure

to have counsel insist upon a foundation before the report was read was error. This argument has no merit.

The role of trial and appellate counsel is quite different. Conscientious appellate lawyers must necessarily comb the record in search of any error—large or small—which might affect the outcome of the case. Items of error are sometimes thought to be fungible with quantity making up for quality. Good trial lawyers have a different task. They have to walk the fine line between insisting upon technical perfection and avoiding the impression of being overly nitpicking, thus irreparably irritating court and jury. What may on appeal appear to be a slim and casual record may be the carefully cultivated defense of a difficult case. Credibility of counsel is an essential tool in trial advocacy. Activity in the form of additional motions or argument may increase the volume of the record, but have no effect on the quality of defense. We appreciate the tensions between trial and appellate advocacy. Hopefully, the styles for each will not become so merged that trial counsel will be required to subordinate common sense, trial strategy, good manners and thoughtfulness to avoid being criticized on appeal. Possibly other lawyers representing Anderson would have taken some or all of the steps appellate counsel has now suggested were essential. Nevertheless, the difference in styles and the brevity of a trial do not require reversal.

## EVIDENTIARY RULINGS

The district attorney, on redirect examination, asked Mrs. Silberberger: "Do you recall making any statements at the time that your father arrived?" to which she replied: "Yes. My father had asked what the hell was going on, because he walked into the situation of seeing me take a gun from Mr. Wasko and have it on him, and I replied to my father that, something along the line that, 'These guys' or 'creeps' are trying to take my baby." An objection was immediately made and sustained. At the request of the prosecutor, the matter was discussed in chambers. The objection was made on several grounds, one of which was that it was a conclusion. The court eventually overruled the objection on the grounds it was a spontaneous declaration. Defendant asserts the question asked for an inadmissible opinion or conclusion. The court reviewed the test for the admission of spontaneous declarations and properly concluded the requisite trustworthiness was present to render it admissible. (Evid. Code, § 1240.) The statement was also admissible as reasonably calculated to help the jury understand Mrs. Silberberger's

behavior in talking Wasko into letting her answer the phone and why she took the risk of taking his gun away. (Evid. Code, § 1250, subd. (a)(2).)

## STATEMENT BY THE COURT AND VERDICT FORM

At the beginning of trial, after meeting with counsel, the court apologized to the jury because of the delay that ensued in discussing certain trial matters. In his apology, the court said the meeting was necessary "because of some matters that should be kept out of [your] hearing . . . I have to . . . work as a screen to determine what you should hear and what you shouldn't hear." This rather innocuous and courteous statement of explanation was neither erroneous nor prejudicial.

Defendant points out that the verdict form did not contain the identical language of the charge of Penal Code section 209. The variance on this record is insignificant. The jury was instructed on the elements of the crime charged and the defendant was found guilty. (See *People* v. *Bratis* (1977) 73 Cal.App.3d 751, 763-764 [141 Cal.Rptr. 45].)

## DISPOSITION

Judgment affirmed.

Brown (Gerald), P. J., and Focht, J.,* concurred.

*Assigned by the Chairperson of the Judicial Council.