Filed 3/17/16  P. v. Williams CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>BERNICE WILLIAMS,<br><br>    Defendant and Appellant. | D067924<br><br><br>(Super. Ct. No. SCN328432-2) |

APPEAL from a judgment of the Superior Court of San Diego County, Blaine K. Bowman, Judge.  Affirmed as modified and remanded with directions.

William G. Holzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal, Collette Cavalier and Elizabeth M. Carino, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Bernice Williams of transportation of cocaine base and possession of cocaine base for sale.  Williams appeals, contending: (1) there was

insufficient evidence to establish that she transported and possessed the cocaine base; (2) the trial court failed to sua sponte instruct the jury on the lesser included offense of simple possession; and (3) the trial court erred by staying rather than striking four prison prior enhancements. Lastly, Williams asks us to independently review a sealed transcript to determine whether the trial court properly declined to reveal the identity of a confidential informant. The Attorney General concedes and we agree that the trial court erred in failing to strike the prison prior enhancements. In all other respects, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In December 2013, Detective Joe Kempton of the San Diego County Sheriff's Department Narcotics Task Force began a drug-trafficking investigation into Williams. As part of that investigation, Detective Kempton placed a GPS tracking device on Williams's car. The GPS tracking revealed that Williams traveled from the north San Diego area to Compton regularly, sometimes multiple times a week. During those trips, Williams would stop in Compton for 10 to 15 minutes and then come right back to San Diego.

Detective Kempton and other officers also conducted physical surveillance of Williams's movements. On one occasion, Detective Kempton observed conduct that in his opinion was consistent with drug sales. In particular, Williams pulled over on a side street, picked up a Black male, drove about two blocks, and then pulled over again to let the male out of the car. After two months of conducting GPS and physical surveillance on Williams, Detective Kempton concluded she was involved in selling crack cocaine that she obtained in Compton.

2

On a day in February 2014, electronic surveillance showed that Williams's vehicle made a trip from Fallbrook to Compton and then quickly turned around and returned. Detective Kempton believed that Williams had gone to Compton that day to replenish her supply of crack cocaine. Thus, he asked Oceanside police officers to make contact with Williams's vehicle.

Upon their arrival, officers observed Williams's vehicle parked in a carport with the engine still running. The front passenger door was propped open halfway by the passenger's leg. Williams was sitting in the driver's seat with her purse on her lap. Valisa Joy was in the front passenger seat. Both women were looking down at Joy's purse, which was sitting open on the center console. Williams and Joy each had one hand on Joy's purse. When Joy noticed the officers, she grabbed her purse from the center console and tried to hide it under her seat.

The officers spoke with Williams and Joy. The officers determined that Joy lived in the apartment complex where Williams had parked her car. Williams stayed at the apartment sometimes and had a key to it. While talking to the officers, Williams appeared anxious and was shaking.

An officer searched Williams's car and the purses found in it. The officer found three cell phones in Williams's purse and five $100 bills in a glass cup in the center console of the vehicle. Inside Joy's purse, the officer found a black plastic bag, which was tied in a loose knot and contained three hard circular objects. Those objects were disks of crack cocaine, weighing 625.2 grams and worth $62,500.

Detective Kempton later searched Williams's three cell phones, but did not find any evidence related to drug trafficking. He believed Williams had deleted any incriminating messages. According to Detective Kempton, it is common for drug traffickers to have multiple cell phones to conduct their business.

Detective Kempton explained that Compton is a hub for cocaine trafficking. Dealers often went to Compton to purchase cocaine and then brought it down to San Diego. The cocaine from Compton was good quality, could be purchased at a cheaper price than in San Diego, and resold for more money. For example, one ounce of crack cocaine could be purchased in Compton for $650 versus $900 in San Diego. Although it can vary, the typical amount of cocaine purchased by a street level user was approximately one gram, which costs $100 in San Diego. Detective Kempton opined that Williams possessed the crack cocaine officers found in this case for sale. He based that opinion on the amount of cocaine found, the bulk form of the cocaine, Williams's frequent trips to Compton, and Williams's multiple cell phones.

Joy pleaded guilty to possession of cocaine base for sale. The trial court admitted her guilty plea into evidence. Based in part on that guilty plea, the defense argued the cocaine in Joy's purse belonged only to Joy. Further, the defense argued that Williams did not possess the cocaine found in Joy's purse because there was no evidence that it came from Compton. Rather, the defense claimed that the only reasonable inference from the evidence was that just before officers arrived at the carport, Joy had entered Williams's vehicle with the cocaine already inside of her purse.

4

DISCUSSION

I. *Sufficiency of the Evidence*

A.  Standard of Review

In assessing the sufficiency of the evidence, we examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  (*People v. Hillhouse* (2002) 27 Cal.4th 469, 496.)  We must presume in support of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence.  (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.)  Unless it is clearly shown that "on no hypothesis whatever is there sufficient substantial evidence to support the verdict," we will not reverse.  (*People v. Hicks* (1982) 128 Cal.App.3d 423, 429.)

"The standard of review is the same in cases in which the People rely mainly on circumstantial evidence.  [Citation.]  'Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt.  " 'If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment.' "  [Citations.]'  [Citation.]  ' "Circumstantial evidence may be sufficient to connect a defendant with the crime and to

5

prove his guilt beyond a reasonable doubt." ' " (*People v. Stanley* (1995) 10 Cal.4th 764, 792-793.)

B.  Transportation

Williams argues insufficient evidence supported her conviction for transportation of a controlled substance.  We disagree.

"Transportation of a controlled substance is established by carrying or conveying a usable quantity of a controlled substance with knowledge of its presence and illegal character.  [Citations.]  The crime[] can be established by circumstantial evidence and any reasonable inferences drawn from that evidence. " (*People v. Meza* (1995) 38 Cal.App.4th 1741, 1746 (*Meza*).)  "Circumstantial evidence is like a chain which link by link binds the defendant to a tenable finding of guilt.  The strength of the links is for the trier of fact, but if there has been a conviction notwithstanding a missing link it is the duty of the reviewing court to reverse the conviction." (*People v. Redrick* (1961) 55 Cal.2d 282, 290 (*Redrick*).)

Here, the parties stipulated that Williams "knew of the nature or character of cocaine base as a controlled substance."  She challenges only the sufficiency of the evidence to support the "carrying or conveying" element of the offense, arguing there was no evidence that the cocaine was inside her vehicle when she traveled from Compton to San Diego.

Viewing the evidence in the light most favorable to the judgment, as we must, the circumstantial evidence and reasonable inferences therefrom were sufficient to support Williams's conviction for transportation of a controlled substance.  Detective Kempton

6

testified that "Compton is a hub of cocaine trafficking." He further testified that Williams's pattern of driving from San Diego to Compton, stopping only briefly, and returning was consistent with drug trafficking. He explained that when drug traffickers travel to a location to replenish or "re-up" their drug supply, the meeting is brief to avoid law enforcement detection.

Williams's conduct on the day of her arrest was consistent with the "re-upping" behavior described by Detective Kempton. Just before Williams was arrested in this case, she had traveled from San Diego to Compton and had quickly turned around and returned. The engine of her car was still running when officers contacted her. Further, Williams had her hand on Joy's purse and was looking into it. Although there was no direct evidence that Williams picked up cocaine in Compton before returning to San Diego, the circumstantial evidence supported this conclusion.

Williams asserts that Detective Kempton's belief that Williams had crack cocaine in her vehicle when she traveled from Compton to San Diego is "mere speculation" and cannot support a finding of fact. It is, of course, settled that a conviction cannot be based on mere speculation and conjecture. (*People v. Marshall* (1997) 15 Cal.4th 1, 35 ["mere speculation cannot support a conviction"]; *People v. Harvey* (1984) 163 Cal.App.3d 90, 105, fn. 7 ["Substantial evidence means more than simply one of several plausible explanations for an ambiguous event."].) However, as we explained, on the totality of the evidence here, a reasonable trier of fact could draw nonspeculative inferences that Williams transported the cocaine from Compton to San Diego just before she was arrested.

7

Lastly, Williams argues that because the drugs were in Joy's purse and the car was parked at Joy's apartment complex, the record suggests Joy brought the drugs into the car with her. "The existence of possible exculpatory explanations, whether they are simply suggestions not excluded by the evidence or even where they could be reasonably deduced from the evidence, could not justify this court's rejecting the determination of the trier of fact that defendant is guilty unless on appeal it 'be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below.' " (*Redrick*, *supra*, 55 Cal.2d at p. 290.) While the evidence may be reconciled with a finding that Joy had the drugs in her purse when she entered Williams's vehicle, the circumstances also reasonably justify the jury's findings. Where, as here, we find no missing link in the chain of circumstantial evidence, we will not interfere with the jury's findings simply because there is a possible exculpatory explanation. (*Ibid.*)

C. Possession

Williams argues insufficient evidence supported her conviction for possessing a controlled substance for sale because it was pure speculation that she possessed the crack cocaine found in Joy's purse. We disagree.

"Unlawful possession of a controlled substance for sale requires proof the defendant possessed the contraband with the intent of selling it and with knowledge of both its presence and illegal character." (*Meza*, *supra*, 38 Cal.App.4th at pp. 1745-1746.) "Possession may be either actual or constructive; the latter is established by showing that defendant maintained some control or right to control over contraband in the physical

8

possession of another." (*People v. Rogers* (1971) 5 Cal.3d 129, 134.) "[P]ossession may be imputed when the contraband is found in a place which is immediately and exclusively accessible to the accused and subject to his dominion and control, or to the joint dominion and control of the accused and another." (*People v. Williams* (1971) 5 Cal.3d 211, 215.) However, defendant's mere presence in the place where the contraband is found is not sufficient on its own to support a finding of unlawful possession. (*People v. Johnson* (1984) 158 Cal.App.3d 850, 854.)

Here, the record contains substantial evidence of possession. The evidence established that Williams owned the vehicle in which the officers found Joy's purse containing cocaine base. When officers approached William's vehicle, Williams and Joy were both looking down at Joy's purse, which was sitting open on the center console between them. Williams and Joy each had one hand on the purse. This evidence established that Williams had access to the purse containing the cocaine base and it was subject to her dominion and control. The fact that Joy also had dominion and control over the purse does not defeat Williams's possession. "[P]ossession need not be exclusive to support a conviction of possession of a narcotic." (*People v. White* (1970) 11 Cal.App.3d 390, 396.)

Williams offers a "variety of innocent explanations" for why her hand was on Joy's purse. For example, she claims she could have been looking for another item, steadying the purse on the center console, or attempting to purchase a small amount of drugs from Joy. However, "[t]he credence and ultimate weight to be given the evidence of the various particular circumstances are of course for the trier of fact, and '[i]t is the

9

trier of fact, not the appellate court, that must be convinced of a defendant's guilt beyond a reasonable doubt. If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment.' " (*Redrick*, *supra*, 55 Cal.2d at p. 289.) Based on the record before us, there was substantial evidence to support the jury's finding of possession.

## II. *Lesser Included Offense Instruction*

Williams argues the trial court erred by failing to sua sponte instruct the jury on the lesser included offense of simple possession. We reject this argument.

Simple possession is a lesser included offense of possession of a controlled substance for sale. (*People v. Oldham* (2000) 81 Cal.App.4th 1, 16.) The trial court has a sua sponte duty to instruct the jury on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present, "but not when there is no evidence the offense was less than that charged." (*People v. Saldana* (1984) 157 Cal.App.3d 443, 453-454; *People v. Birks* (1998) 19 Cal.4th 108, 118.) "In deciding whether there is substantial evidence of a lesser offense, courts should not evaluate the credibility of witnesses, a task for the jury." (*People v. Breverman* (1998) 19 Cal.4th 142, 162 (*Breverman*).) Instructions on lesser included offenses are required only if the evidence would justify a conviction of the lesser included offense. (*People v. Lopez* (1998) 19 Cal.4th 282, 287-288; *People v. Leach* (1985) 41 Cal.3d 92, 106.) " 'On appeal, we review independently the question whether the trial court failed to instruct on a lesser included offense.' " (*People v. Avila* (2009) 46 Cal.4th 680, 705.)

Here, the evidence did not support a conviction on the lesser offense of simple possession. Officers found three disks of crack cocaine, weighing 625.2 grams and worth $62,500. They also found three cell phones in Williams's purse and five $100 bills in the center console of her vehicle. According to Detective Kempton, the typical amount of cocaine purchased by a street level user was approximately one gram, which costs $100 in San Diego. Further, he testified that drug dealers often use multiple cell phones to conduct their business. This evidence suggests Williams was guilty of possession for sale, and we find no substantial evidence to support simple possession. Moreover, Williams's defense was that she did not have possession of the cocaine base at all; instead, she claimed it belonged to Joy who had it in her purse when she entered the vehicle. (*People v. Anderson* (1979) 97 Cal.App.3d 419, 425 ["Where the giving of the instruction is in direct conflict with the defense theory, the court does not have the sua sponte duty of giving that instruction."].) Therefore, we conclude the trial court did not err when it failed to sua sponte instruct the jury on the lesser included offense of simple possession.

Even if we were to find error, the error would be harmless. In *Breverman*, the California Supreme Court held that "in a noncapital case, error in failing sua sponte to instruct, or to instruct fully, on all lesser included offenses and theories thereof which are supported by the evidence must be reviewed for prejudice exclusively under [*People v.*] *Watson* [(1956) 46 Cal.2d 818]." (*Breverman*, *supra*, 19 Cal.4th at p. 178.) Under this test, we must examine the entire record to determine whether it was reasonably probable the error affected the outcome. (*Ibid.*) Under the facts of this case, we find it is not

11

reasonably probable that the alleged error affected the outcome. As discussed above, the crucial evidence uniformly pointed to Williams's guilt of the greater offense of possession for sale. Therefore, it is not reasonably probable that an instruction on the lesser offense would have produced a different result.

### III. *Prison Prior Enhancements*

In pronouncing Williams's sentence, the trial court noted that it could impose a sentence of 21 years, but did not feel it was warranted in this case. Instead, the trial court sentenced Williams to a total term of 17 years, split between a custody term of 13 years and a mandatory supervision term of four years. The trial court stayed the imposition of sentence for Williams's four prison priors.

Williams argues and the People concede that the trial court erred by staying rather than striking the prison priors. We agree with the parties. A trial court is required to either impose the prison prior enhancement or strike it. (*People v. Garcia* (2008) 167 Cal.App.4th 1560, 1561.) Where, as here, it is clear from the record that the trial court intended to strike the enhancements, we have jurisdiction to correct the sentence. (*People v. Jack* (1989) 213 Cal.App.3d 913, 916.) Williams's sentence is modified to strike the four prison prior enhancements under Penal Code section 667.5, subdivision (b).

### IV. *Identity of Confidential Informant*

A public entity can refuse to disclose the identity of a confidential informant where such disclosure is "against the public interest because the necessity for preserving the confidentiality of his or her identity outweighs the necessity for disclosure in the

12

interest of justice." (Evid. Code, § 1041, subd. (a)(2).) If a criminal defendant requests disclosure on the ground the informant is a material witness on the issue of his guilt, the court must conduct a hearing outside the presence of the jury; if the privilege is asserted in that hearing, the prosecuting attorney may request that the court conduct an in camera hearing outside the presence of the defendant and his counsel. At the in camera hearing, the prosecution may present evidence to aid the court in its determination of whether the identity of the informant must be disclosed. (Evid. Code, § 1042, subd. (d).) The court cannot order disclosure unless, based upon the evidence presented at the hearings, it concludes that there is a reasonable possibility that nondisclosure might deprive the defendant of a fair trial. (*Ibid.*)

Prior to trial, Williams moved for disclosure of the identity of a confidential informant based on a police report indicating that Detective Kempton learned from an informant that Williams was selling crack cocaine in the north San Diego County area. Williams argued there was a reasonable probability that the informant could provide evidence that would exonerate her. The prosecution opposed the motion, asserting the privilege against disclosure set out in Evidence Code section 1041, and requested an in camera hearing. The trial court conducted an in camera hearing in which it heard testimony from Detective Kempton. The court thereafter ruled that the informant could not offer exculpatory or impeachment evidence benefiting Williams and the need for the privilege outweighed any need to disclose the information.

13

Williams asked this court to independently review the sealed transcript of the in camera hearing so as to assess the correctness of the trial court's ruling, and the People express no objection. Having done so, we conclude the trial court did not err in denying defense counsel's request to disclose the identity of the confidential informant because the informant did not provide information that was exculpatory or material to Williams's guilt or innocence with respect to the offenses charged in this case. (Evid. Code, § 1040, subd. (d).)

## DISPOSITION

The judgment is modified to strike the four prison prior enhancements; as so modified, the judgment is affirmed. The matter is remanded to the trial court to amend the abstract of judgment reflecting this modification and forward a copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.

PRAGER, J.[*]

WE CONCUR:

McCONNELL, P. J.

NARES, J.

---

[*]     Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.