Filed 5/11/26  P. v. Escalera CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E084390 |
| v. | (Super.Ct.No. FWV17003792) |
| OSCAR ALVARADO ESCALERA, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  John Nho Trong Nguyen, Judge.  (Retired judge of the Orange Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed in part; vacated in part with directions.

Aaron J. Schechter, under appointment by the Court of Appeal, for Defendant and Appellant.

1

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting and Paige B. Hazard, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Oscar Alvarado Escalera of committing 34 sex offenses against his stepdaughter, Jane Doe 1. On appeal, he argues that the trial court prejudicially erred by failing to instruct the jury on the lesser included offense of attempt for each completed offense. He also argues that the trial court committed structural error by not reading the unanimity instruction for each charged count. In addition, he contends that the trial court was not authorized to issue a no-contact order under Penal Code section 1202.05, because Doe 1 was an adult when the order was entered. (Unlabeled statutory references are to the Penal Code.) We agree about the no-contact order but remand for the trial court to consider imposing a protective order under section 136.2, subdivision (i)(1) (section 136.2(i)(1)). We also direct the trial court to correct clerical errors in the sentencing minute order and the abstract of judgment. We otherwise affirm.

## BACKGROUND

I.    *Family background*

Jane Doe 1 was born in January 1998. Doe 1's mother, Yvette P., met Escalera in 2003. In 2005, Yvette and Escalera married. Escalera had a minor son, who was born in 1999. Escalera and Yvette had one daughter, who was born in 2006.

II.     *Doe 1 reports sexual abuse*

Doe 1 lived at home when she was 19 and attended community college, where she played on the basketball team. During the summer of 2017, Doe 1 turned in a writing assignment to her basketball coach in which she described being raped by an uncle named Oscar. When the coach asked Doe 1 about the disclosure, Doe 1 said that the incident happened in the past and she did not want to discuss it further.

In September 2017, Yvette borrowed Doe 1's cell phone to contact Escalera while Doe 1 was asleep. Yvette noticed that Escalera had sent Doe 1 multiple text messages with "really inappropriate things," such as Escalera asking Doe 1 whether she had showered or shaved. Yvette woke Doe 1, who then told her mother that Escalera had been sexually abusing her since she was about nine or 10 years old. Yvette did not immediately call the police.

Doe 1 called her basketball coach because she was uncertain whether Yvette would ever contact law enforcement, and Doe 1 "knew it wasn't going to end unless [they] did." Doe 1 went to her coach's house and disclosed that Escalera had been sexually abusing her. Doe 1 said that everything that she had written for the summer assignment was true except that the perpetrator was her stepfather, not her uncle. The basketball coach took Doe 1 to the police station, where Doe 1 reported the abuse to officers.

3

III.    *The charges*

The People charged Escalera by third amended information with a total of 43 sexual offenses alleged to have been committed against Doe 1 when she was between nine years old and 19 years old, with numerous offenses alleged to have been committed every year during that period.  The People also alleged that numerous aggravating circumstances applied.

The People alleged that Escalera committed the following 35 offenses when Doe 1 was a minor:  (1) when Doe 1 was nine, one count of aggravated sexual assault of a child under 14 years old (§ 269, subd. (a)(1); count 1) and two counts each of sexual intercourse or sodomy with a child age 10 or younger (§ 288.7 subd. (a); counts 2-3) and oral copulation or sexual penetration of a child age 10 or younger (§ 288.7, subd. (b); counts 4-5); (2) from age 10 through age 13, one count per year of each of lewd and lascivious conduct upon a child under age 14 (§ 288, subd. (a); counts 8, 11, 15, 19) and aggravated sexual assault by rape and by sodomy of a child under age 14 (§ 269, subd. (a)(1) & (3); counts 6-7, 9-10, 12-13, 16-17); (3) from age 12 through age 13, one count per year of aggravated sexual assault by oral copulation of a child under 14 (§ 269, subd. (a)(4); counts 14 & 18); and (4) from age 14 through age 17, one count per year of each of forcible rape of a child over age 14 (§ 261, subd. (a)(2); counts 20, 24, 28, 32), forcible sodomy of a minor age 14 or older (§ 286, subd. (c)(2)(C); counts 21, 25, 29, 33), sexual penetration by foreign object of a minor over age 14 (§ 289, subd. (a)(1)(C); counts 22,

26, 30, 34), and forcible oral copulation of a minor over age 14 (former § 288a, subd. (c)(2)(C); counts 23, 27, 31, 35).

The People alleged that when Doe 1 was 18 and 19, Escalera committed one count per year of forcible rape (§ 261, subd. (a)(2); counts 36 & 40), forcible sodomy (§ 286, subd. (c)(2)(A); counts 37 & 41), and sexual penetration by a foreign object (§ 289, subd. (a)(1)(A); counts 38 & 42). The People also alleged that Escalera committed two counts of forcible oral copulation when Doe 1 was 19. (§§ 287, subd. (c)(2)(A), former 288a, subd. (c)(2)(A); counts 43 & 48.)

The People also charged Escalera with committing four sexual offenses against a different minor, Jane Doe 2, but the jury acquitted Escalera of those counts. Those counts accordingly are irrelevant to this appeal.

IV.    *Doe 1's testimony*

Doe 1 was 26 years old when she testified at trial. When Yvette and Escalera were married, Yvette worked at night and on weekends. When Doe 1 was nine years old, Escalera started watching pornographic movies with her at night while Yvette was at work and the other children slept. While doing so, Escalera massaged Doe 1's legs, arms, and back and caressed her hair. He also touched the outside of Doe 1's "private" or "pubic" area, both when she was clothed and when she was unclothed, approximately six to eight times when she was nine.

Escalera thereafter regularly sexually abused Doe 1 until she was 19 and reported the abuse to law enforcement.  She described in detail the subsequent abuse and its progression over the years.  When Doe 1 was 10 years old, Escalera started having sexual intercourse with her, inserted his penis into her vagina at least 20 times, inserted sex toys into her vagina and anus at least 30 times, and had her orally copulate him between 10 and 20 times.[1]  Escalera regularly performed each of those acts in every subsequent year (with variation in frequency from 10 to 30 times per year depending on how often Doe 1's mother worked) until Doe 1 reported the abuse at age 19.  When Doe 1 was 14, Escalera started inserting his penis into her anus, which he did more than 10 times that year and then at least 10 times per year until she reported the abuse.

Throughout the years, the frequency of abuse involved the same regular pattern, process, or routine.  Escalera sexually abused Doe 1 approximately twice per week on nights when Yvette worked.

V.    *Escalera's testimony*

Escalera denied that he ever sexually abused Doe 1 when she was a minor, and he denied that he would ever have sex with a child.  He claimed that he began having a consensual sexual relationship with Doe 1 when she was 18 years old.  He and Doe 1 started flirting, and then "[i]t turned sexual."  The sexual relationship lasted

---

[1]    Doe 1 testified that Escalera started inserting sex toys in her anus when she was 10 and 11.  She also explained that he "[a]lmost always" inserted sex toys in both her vagina and her anus.

6

approximately one to three months. He admitted that he had vaginal sex with her more than once and engaged in "other sex acts" with her. He denied that he ever used any sex toys with Doe 1. Escalera denied that he ever forced Doe 1 to have sex with him and denied that he raped her.

VI.    *The verdict*

The jury acquitted Escalera of the following offenses involving Doe 1: (1) All five offenses alleged to have occurred when she was nine years old (§§ 269, subd. (a)(1), 288.7, subds. (a)-(b); counts 1-5) and (2) the four aggravated sexual assault by sodomy counts alleged to have occurred each year when Doe 1 was age 10 through 13 (§ 269, subd. (a)(3); counts 7, 10, 13, 17). The jury convicted Escalera of the remaining 34 offenses. (§§ 261, subd. (a)(2) [counts 20, 24, 28, 32, 36, 40], 269, subd. (a)(1) [counts 6, 9, 12, 16], 269, subd. (a)(4) [counts 14 & 18], 286, subd. (c)(2)(A) [counts 37 & 41], 286, subd. (c)(2)(C) [counts 21, 25, 29, 33], 287, subd. (c)(2)(A) [count 48], 288, subd. (a) [counts 8, 11, 15, 19], former 288a, subd. (c)(2)(A) [count 43], former 288a, subd. (c)(2)(C) [counts 23, 27, 31, 35], 289, subd. (a)(1)(A) [counts 38 & 42], 289, subd. (a)(1)(C) [counts 22, 26, 30, 34].) In a bifurcated proceeding, the court found true three aggravating circumstances as to specified offenses, including count 26 (§ 289, subd. (a)(1)(C)). The court sentenced Escalera to an aggregate term of 336 years to life in state prison.

## DISCUSSION

### I.     *Alleged instructional errors*

### A.     *Unanimity instructions*

Escalera contends that the trial court violated his constitutional rights to due process and a jury trial and thereby committed structural error by failing to orally instruct the jury with the unanimity instruction for each charged count. We independently review claims of instructional error. (*People v. Lewis* (2023) 14 Cal.5th 876, 900.) We find no prejudicial error.

#### 1.     *Relevant proceedings*

The jury was charged with deciding Escalera's guilt on 47 separate counts. For each count, the written jury instructions contain a separate unanimity instruction that is a slightly modified version of CALCRIM No. 3500. The instructions are numbered 3500-1, 3500-2, and so on, with the number following the hyphen representing the count corresponding to that instruction.

Each written unanimity instruction contains two paragraphs. The first paragraph identifies the offense charged, the count number, and the period during which the offense allegedly occurred. The second paragraph is the same for each count and reads: "The People have presented evidence of more than one act to prove that the defendant committed this offense. You must not find the defendant guilty unless you all agree that the People have proved that the defendant committed at least one of these acts and you all

agree on which act he committed." The jury was provided with four copies of the written jury instructions during deliberations.

Before reading the unanimity instructions to the jury, the court took a recess and had an off-the-record discussion with counsel. The court subsequently made the following statement on the record without the jury present: "During the break, [the] Court discussed how to read the last 48 pages of instructions. Unanimously for each of the counts, counsel agreed for, counsel agreed for the Court to read the instruction 3501, 3502 so forth until 48. The Court will read the first instruction in full. Tell the jury that the second part of the instruction, the Court reads the second part. The Court will not read it, because it's exactly the same for the 48 counts. The instructions that you receive has the entire instruction. Okay. Is that okay?" The prosecutor answered, "Yes," and defense counsel responded, "That's fine."

The court then resumed reading the instructions to the jury. When the court reached the unanimity instructions, it told the jury: "Now I have 48 cases to read to you. We are going to get it done. Okay. Based on counsel's consent, what I'm going to read is as follow[s]: [¶] 48 pages. Okay. 47 pages. Okay. Is it 47—47 pages. I'm going to read the first page. Listen carefully. I call is 3500-1. All the way up to 3500-48. Okay. Each page, 3500-1 pertains to one specific period, first period. Dash 2, second period. Dash 3, third period, so forth and so on. Follow me so far? Okay. So let's begin."

The court then read the entirety of the unanimity instruction for count 1, including the above modified second paragraph of CALCRIM No. 3500. After reading the

9

instruction, the court commented: "Follow me? Understand? Okay. Now, what I'm going to do is as follows. I'm going to read this instruction from 3500-1 to 3500-48, there are two parts. The first part tells you what charge period. Count 1, January 13, 2007, to January 13, 2008. Count 2, is different. But the second count is exactly the same in each of those 48 pages—47 pages. Whatever. Okay. So I'm not going to read the second part. Is that okay with you?" The jurors answered, "Yes," and the court continued as follows: "I'll give you this thing to read in the jury room. Okay. I'm going to read it twice so you know what I'm talking about. All the following instructions contain the second part. It reads as follows: [¶] The People have presented evidence of more than one act to prove that the defendant committed this offense—to the next. To the next one and the next one. Okay. [¶] You must not find the defendant guilty unless you all agree that the People have proved that the defendant committed at least one of those acts and you all agree on which act he committed. [¶] That second part, I'm not going to read it. Is that good? You know what I'm saying; right?" The jury again responded in the affirmative.

The court then read the unanimity instruction for count 2 as follows: "Now, 3500-2. The second time period now. [¶] The defendant is charged with engaging in sexual intercourse or sodomy with a child ten years or younger, violation of Penal Code section 288.7(a), in Count 2 on or about January 13, 2007, to January 12, 2008. [¶] That same period of time, but different charge. Same period of time, different charge. Right?

10

Right?  Okay.  So same period of time, two different charges."  For the remaining 45 counts, the court only read the first paragraph of the written unanimity instruction.

For some of the remaining 45 unanimity instructions, the jurors confirmed that they did not need the court to read the second paragraph.  For others the court said something like "[s]ame second paragraph already read."

      2.     *Analysis*

We need not decide whether the trial court erred by not reading the full unanimity instruction for every count, because any such error was harmless under any standard. (*Chapman v. California* (1967) 386 U.S. 18, 24 [federal harmlessness standard]; *People v. Watson* (1956) 46 Cal.2d 818, 836-837 [state law harmlessness standard].)  We presume that the jury followed the written instructions if there was any variance between the oral and written instructions.  (*People v. Grimes* (2016) 1 Cal.5th 698, 729; *People v. Mills* (2010) 48 Cal.4th 158, 200-201 (*Mills*).)  And it is undisputed that the court provided the jury with four copies of the written instructions that included the complete two-paragraph unanimity instruction as it applied to each count.

Moreover, the court did read the full unanimity instruction to the jury twice.  (Cf. *People v. Milosavljevic* (2010) 183 Cal.App.4th 640, 646-648 [failure to give unanimity instruction altogether not harmless beyond a reasonable doubt].)  The court explained in detail that the second paragraph (the actual unanimity portion of each of the instructions) applied equally to each of the 47 counts.  The jurors affirmatively indicated that they understood the approach taken by the court, and they confirmed that they did not want the

court to repeat the second paragraph of the unanimity instruction for each count. In addition, the court repeatedly reminded the jurors that the same second paragraph that it had read aloud twice applied to the unanimity instruction for subsequent counts.

Given those circumstances, we conclude that any putative error in failing to orally instruct the jury with the complete unanimity instruction for each count was harmless beyond a reasonable doubt. (See, e.g., *People v. Garceau* (1993) 6 Cal.4th 140, 189-190 (*Garceau*) [no due process violation in failure to read a full instruction by inadvertently omitting a paragraph of the instruction because the error was not prejudicial given that the jury received the correct written instruction], overruled on another ground in *People v. Yeoman* (2003) 31 Cal.4th 93, 117-118; *Mills*, *supra*, 48 Cal.4th at pp. 200-201 ["no reversible error, structural or otherwise" to misread three jury instructions given that the jury was given the correctly worded instructions]; *People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 455 [error in misreading of jury instruction "of no moment" given that the jury was given "a written instruction that properly and fully stated the law"]; *People v. Osband* (1996) 13 Cal.4th 622, 687 (*Osband*) [error in orally misstating instructions harmless because the jury was given correct written instructions]; *People v. Andrews* (1989) 49 Cal.3d 200, 215-216 (*Andrews*) [same].)

Relying on *United States v. Becerra* (9th Cir. 2019) 939 F.3d 995 (*Becerra*) and *Guam v. Marquez* (9th Cir. 1992) 963 F.2d 1311 (*Marquez*), Escalera argues that "[t]he trial court's failure to read orally the unanimity instructions for each count constitutes structural error." The argument is unpersuasive. We are not bound by Ninth Circuit

12

precedent. (*People v. Federico* (2011) 191 Cal.App.4th 1418, 1424, fn. 4.) We instead are bound by the decisions of our Supreme Court. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 454.) Our Supreme Court has held that errors in reading instructions to the jury are subject to harmlessness analysis. (See, e.g., *Garceau*, *supra*, 6 Cal.4th at pp. 189-190; *Osband*, *supra*, 13 Cal.4th at p. 687; *Andrews*, *supra*, 49 Cal.3d at pp. 215-216.)

In addition, *Becerra* and *Marquez* are distinguishable. In both cases, the federal district courts did not read any instructions to the jury at all; they just provided the juries with written instructions and said to follow those. (*Marquez*, *supra*, 963 F.2d at pp. 1312-1313; *Becerra*, *supra*, 939 F.3d at pp. 997-998.) In *Marquez*, the Ninth Circuit held "that the refusal of a trial court to read the elements of an alleged offense to the jury compels an automatic reversal because the impact of the error on the jury's performance of its duties cannot be reviewed." (*Marquez*, at p. 1316.) *Becerra* followed *Marquez* because it was binding precedent. (*Becerra*, at pp. 1002-1003.) *Becerra* acknowledged that the "[o]mission of a single element of the charged offense from the jury instructions is error, but not structural error." (*Id.* at p. 1003.)

The present case is unlike *Marquez* and *Becerra* in that the trial court did not fail to read the jury *all* of the instructions on the many charged offenses. Any putative error in the trial court's reading of the instructions therefore does not rise to the level of the errors in *Marquez* and *Becerra* and therefore does not amount to structural error under those cases.

For the foregoing reasons, we conclude that the trial court did not prejudicially err by failing to read the complete unanimity instruction for every count.

B.     *Lesser included offense instructions*

Escalera contends that the trial court prejudicially erred "by failing to sua sponte instruct, on the attempt lesser included offense corresponding to each completed crime." We are not persuaded.

1.     *General intent offenses*

The trial court had no duty to instruct the jury on attempt for any of the general intent offenses. The third amended information charging Escalera with the 34 offenses of which he was convicted merely incorporates the statutory definition of those charged offenses; it does not allege any particular facts in detail. We accordingly apply the elements test to determine whether one offense is a lesser included offense of another. (*People v. Fontenot* (2019) 8 Cal.5th 57, 65.) "'The elements test is satisfied if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, such that all legal elements of the lesser offense are also elements of the greater.'" (*People v. Robinson* (2016) 63 Cal.4th 200, 207 (*Robinson*).)

For general intent crimes, the required mental state is "'only an intent to do the act that causes the harm; a crime is characterized as a 'specific intent' crime when the required mental state entails an intent to cause the resulting harm.'" (*People v. Davis* (1995) 10 Cal.4th 463, 518, fn. 15.) Escalera was convicted of 18 counts of forcible rape, sodomy, and oral copulation. (§§ 261, subds. (a)(2) & (c)(2)(C), 286, subd. (c)(2)(A) &

(C), 287, subd. (c)(2)(A), former 288a, subd. (c)(2)(A) & (C); counts 20-21, 23-25, 27-29, 31-33, 35-37, 40-41, 43, 48.)  All of those offenses are general intent crimes.  (*Davis*, at p. 519 [sodomy is a general intent crime]; *People v. Griffin* (2004) 33 Cal.4th 1015, 1022 ["Rape is a general intent offense"]; *People v. Warner* (2006) 39 Cal.4th 548, 557 [forcible oral copulation is a general intent offense]; *People v. Whitham* (1995) 38 Cal.App.4th 1282, 1293 ["[R]ape (§ 261), sodomy (§ 286), and oral copulation ([former] § 288a) are all general intent crimes"].)

"An attempt to commit a crime consists of two elements:  a specific intent to commit the crime, and a direct but ineffectual act done toward its commission."  (§ 21a.) Attempt accordingly is a specific intent crime.

The attempted offenses for forcible rape, sodomy, and oral copulation therefore include "a particularized intent that goes beyond what is required by the completed offense" (*People v. Bailey* (2012) 54 Cal.4th 740, 753) of forcible rape, sodomy, and oral copulation.  Because specific intent is not an element of the general intent offenses of forcible rape, sodomy, and oral copulation, not all of the elements of the attempt offenses are elements of the completed offenses.  (*Ibid.*; *Robinson*, *supra*, 63 Cal.4th at p. 207.) Attempt therefore is not a lesser included offense of forcible rape, sodomy, and oral copulation.  The trial court consequently was not required to instruct the jury on attempt for those offenses.  (*Bailey*, at p. 753.)

### 2. *The remaining offenses*

A trial court has a sua sponte duty to instruct on lesser included offenses "if there is substantial evidence the defendant is guilty of the lesser offense, but not the charged offense." (*People v. Breverman* (1998) 19 Cal.4th 142, 177 (*Breverman*), disapproved on another ground in *People v. Schuller* (2023) 15 Cal.5th 237, 260, fn. 7.) The obligation does not arise "when there is no evidence that the offense was less than that charged" (*Breverman*, at p. 154) and the evidence shows only that "the defendant is either guilty of the offense charged or not guilty at all" (*People v. Anderson* (1979) 97 Cal.App.3d 419, 425 (*Anderson*); *People v. Hardy* (2018) 5 Cal.5th 56, 98). We independently review a trial court's failure to instruct on a lesser included offense. (*People v. Licas* (2007) 41 Cal.4th 362, 366.)

The remaining 16 offenses of which Escalera was convicted and as to which he claims that the trial court should have instructed the jury on the lesser included offense of attempt are: (1) four counts of lewd and lascivious conduct with a child under age 14 (§ 288, subd. (a); counts 8 [age 10], 11 [age 11], 15 [age 12], 19 [age 13]); (2) four counts of aggravated sexual assault by rape of a child under age 14 (§ 269, subd. (a)(1); counts 6 [age 10], 9 [age 11], 12 [age 12], 16 [age 13]); (3) two counts of aggravated sexual assault by oral copulation of a child under age 14 (§ 269, subd. (a)(4); counts 14 [age 12] & 18 [age 13]); (4) four counts of sexual penetration by a foreign object of a minor over age 14 (§ 289, subd. (a)(1)(C); counts 22 [age 14], 26 [age 15], 30 [age 16], 34 [age 17]);

and (5) two counts of sexual penetration by a foreign object (§ 289, subd. (a)(1)(A); counts 38 [age 18] & 42 [age 19]).

We assume for the sake of argument that attempt is a lesser included offense for each of those 16 offenses. The record contains no evidence that Escalera merely attempted but failed to complete any of those offenses. In describing the sexual acts that Escalera committed against her over the course of 10 years, Doe 1 never described any acts by Escalera that would constitute incomplete attempts to commit any of those 16 sex offenses. For example, there was no evidence that Escalera ever attempted to insert his penis or a sex toy into Doe 1's vagina or anus but failed to complete the act. Nor was there evidence that Escalera was ever thwarted in his efforts to commit the offenses at issue. Moreover, Escalera denied that he ever had any sexual contact with Doe 1 before she was 18, and he denied that he ever used any sex toys with her when she was 18 and 19.

In sum, there was evidence that Escalera committed the charged offenses, and there was his testimony that he did not commit them, but there was no evidence that he attempted but failed to complete their commission. The trial court accordingly had no obligation to instruct the jury on the lesser included offense of attempt for the remaining 16 specific intent offenses. (*Breverman*, *supra*, 19 Cal.4th at p. 177; *Anderson*, *supra*, 97 Cal.App.3d at p. 425.)

Escalera argues that because the jury acquitted him of all of the offenses allegedly committed when Doe 1 was nine years old, the jury "could have been inclined to believe

17

that some of the completed crimes that were alleged to have occurred when Jane was older than 10 did not actually happen, but appellant merely attempted them."  He contends that "reasonable jurors could have believed that appellant engaged in some sort of inappropriate relationship with Jane when she was a minor, but that the sexual acts as alleged by [Doe 1] did not happen at the times or in the manner that Jane described them to have happened."  The argument lacks merit.  We can only speculate about why the jury acquitted Escalera of the offenses that allegedly occurred when Doe 1 was nine years old.  But the fact remains that the record contains no evidence of any uncompleted attempts to commit the 16 specific intent offenses of which Escalera was convicted.  The trial court therefore was not required to instruct the jury on the lesser included offense of attempt for those offenses.  (*Breverman*, *supra*, 19 Cal.4th at p. 177.)

II.     *No contact order under section 1202.05*

Section 1202.05 provides that if a defendant receives a prison sentence for certain sexual offenses against a victim who "is a child under the age of 18 years, the court shall prohibit all visitation between the defendant and *the child victim*."  (*Id.*, subd. (a), italics added.)  The restrictions on visitation imposed by the provision "apply only to victims who are under the age of 18 at the time of the contemplated visitation."  (*People v. Scott* (2012) 203 Cal.App.4th 1303, 1323 (*Scott*).)

The probation department recommended that the court prohibit all visitation between Escalera and Doe 1 under section 1202.05.  At sentencing, the court stated that it intended to order "all visitations prohibited between the defendant and the child victim"

under section 1202.05.  Defense counsel interjected that Doe 1 was an adult and not a child victim, and the court agreed.  The prosecutor requested that the court issue "a stay away order … under Marsy's Law."[2]  The court ruled:  "The order will be issued that no visitation whatsoever.  No connection between the defendant and the victim in this case.  No communication between the defendant and victim in this case under any form."

The parties agree that section 1202.05 did not authorize the court to prohibit contact between Escalera and Doe 1, because she was an adult when the order was entered.  We concur.  Issuance of a no-contact order under section 1202.05 was therefore unauthorized.  (*Scott*, *supra*, 203 Cal.App.4th at p. 1323.)

The People nevertheless contend that the order should be affirmed with modifications.  The People argue that although the trial court never mentioned section 136.2(i)(1), "the circumstances" show that the order was actually issued pursuant to that provision, which the People argue authorizes such an order.  We disagree.  Although the trial court acknowledged Doe 1's status as an adult when it issued the order, there is nothing in the record to show that the trial court contemplated issuing the no-contact order under section 136.2(i)(1).  Moreover, the no-contact order issued by the court did not conform to the requirements of section 136.2(i)(1).

Section 136.2(i)(1) provides:  "When a criminal defendant has been convicted of a crime … that requires the defendant to register pursuant to subdivision (c) of Section 290,

---

[2]  Article I, section 28, subdivision (b)(2) of the California Constitution provides:  "In order to preserve and protect a victim's rights to justice and due process, a victim shall be entitled to …  [¶]  … be reasonably protected from the defendant and persons acting on behalf of the defendant."

19

the court, at the time of sentencing, shall consider issuing an order restraining the defendant from any contact with a victim of the crime. The order may be valid for up to 10 years, as determined by the court. This protective order may be issued by the court regardless of whether the defendant is sentenced to the state prison …. It is the intent of the Legislature in enacting this subdivision that the duration of a restraining order issued by the court be based upon the seriousness of the facts before the court, the probability of future violations, the safety of a victim and the victim's immediate family, and any information provided to the court pursuant to Section 273.75."

Each of the 34 sex offense counts of which Escalera was convicted required him to register as a sex offender under subdivision (c) of section 290.[3] (§ 290, subd. (c)(1).) The trial court accordingly was required to consider whether to impose an order restraining Escalera "from any contact with a victim of the crime" under section 136.2(i)(1). But section 136.2(i)(1) requires that the court set a time limit up to a maximum of 10 years for such an order. The trial court did not set a time limit for the no-contact order. Moreover, section 136.2(i)(1) sets forth factors that the court is required to consider in setting the duration of the order. There is no indication in the record that the court considered any of those factors. In addition, the court could not impose a blanket no-contact order under section 136.2(i)(1). Rather, section 136.2(i)(1)

---

[3]    Subdivision (c)(1) of section 290 provides that the following people "shall register" as sex offenders: "A person who, since July 1, 1944, has been or is hereafter convicted in any court in this state … of a violation of … Section 261, … Section 266j, 267, 269, 285, 286, 287, 288, 288.3, 288.4, 288.5, 288.7, 289, or 311.1, or former Section 288a."

authorizes the court to issue an order prohibiting Escalera from contacting Doe 1, but it does not authorize the court to prohibit Doe 1 from contacting Escalera. For all of these reasons, the court's no-contact order was not authorized under section 136.2(i)(1).

The trial court was required, however, to consider whether to issue a protective order under section 136.2(i)(1). We accordingly remand the matter for the trial court to do so.

III.     *Clerical errors*

We agree with the parties that the abstract of judgment contains clerical errors that should be corrected. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185-188.)

At sentencing, the court imposed but stayed a $10,000 restitution fine under section 1202.4, subdivision (b). The abstract of judgment reflects that the fine was imposed but not that it was stayed. In addition, the abstract incorrectly indicates that Escalera was sentenced on August 29, 2024, when the sentence was actually imposed on July 23, 2024. We accordingly direct the trial court to amend the abstract to make these corrections.

In addition, the sentencing minute order should be corrected to accurately reflect the sentence orally pronounced. (*People v. Wynn* (2010) 184 Cal.App.4th 1210, 1221.) The corrected minute order from the bifurcated proceeding at which the trial court found the aggravating circumstances true does not reflect that the court found those circumstances true as to count 26.

21

DISPOSITION

The no-contact order imposed at sentencing under section 1202.05 is vacated. The trial court is directed to consider imposition of a protective order under section 136.2(i)(1). The trial court is also directed to prepare a corrected abstract of judgment to reflect that (1) the $10,000 restitution fine imposed under section 1202.4, subdivision (b), was stayed and (2) Escalera was sentenced on July 23, 2024; the court is directed to provide a copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation. The trial court is further directed to amend nunc pro tunc the corrected minute order of April 10, 2024, to reflect that the trial court found the aggravating circumstances true as to count 26. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ
J.

We concur:

McKINSTER
Acting P. J.

LEE
J.

22